[S. F. No. 19942.   In Bank.   Dec. 22, 1960.]

ARTHUR LUZ et al., Respondents, v. RALPH LOPES et al., Appellants.

Reeser, Farrow, Barton & Barton and Babette B. Barton for Appellants.

Edward M. Fellows and Lawrence T. Sutton for Respondents.

PETERS, J.—On January 4, 1956, plaintiffs Arthur Luz and Lillian Luz, his wife, entered into a written agreement with defendants Ralph Lopes and Vern Lopes, his wife, whereby defendants agreed to purchase from plaintiffs certain unimproved real property in San Jose. The purchase price was $13,000, and no down payment was made. The purchase price was to be payable in monthly installments of $100 including principal and interest at 6 per cent, with the first payment due on February 15, 1956. The agreement provided, among other things, that time was of the essence; that the buyers were to pay all taxes and assessments from the date of the agreement; and that, upon failure of the buyers to comply with the conditions and covenants of the contract or to make payments when due, the sellers would be entitled to retain all amounts already paid as consideration, and would thereupon be released from the duty to convey the property.

Defendants entered into possession and, on February 15, 1956, made their first monthly payment. Their only other performance under the written agreement was to pay a portion of the taxes due for 1956. During their occupancy of the

premises, defendants constructed a building on the property, which was valued at somewhere between $4,000 and $7,000.[1]

On July 26 and 29, 1957, notices of termination and cancellation of the contract were served on defendants. On September 11, 1957, a complaint was filed and on September 17, 1957, it was served on defendant Ralph Lopes, who immediately proposed a settlement.

On September 20, 1957, plaintiffs' attorney wrote to defendant Ralph Lopes to the effect that the latter's offer of settlement was acceptable. The attorney stated that under the settlement it was understood that defendants would immediately clear the lien of one Bressani against the property; that defendants would pay $500 per month until the arrearages were paid in full, commencing October 15, 1957, and thereafter resume the $100 monthly payments required by the contract; and that defendants would immediately pay attorney's fees of $150. The letter concluded by stating that, ''In the event you fail to comply with the above, we will proceed against you for the relief demanded in our complaint served upon you September 17, 1957.''

The defendants failed to make the $500 payment due October 15, 1957, and on October 21, 1957, plaintiffs' attorney wrote the defendants, informing them that, ''You are hereby advised to file an answer to our complaint . . . within ten (10) days from the date hereof, otherwise we will proceed on our legal remedies.''

On November 11, 1957, defendant Ralph Lopes, in a letter to plaintiffs' attorney, apologized for his failure to make the October 15, 1957, payment, declared that he was selling the property and had one offer for $19,000, but thought he could get at least $22,000. He also wrote: ''Please bear with me just a little longer and I will have the property sold so I can realize a little out of my improvements. Mr. Luz has been very patience [sic], and I hope this meets with your approval, please work with me, and the least I can do is pay all the fees involved so far, I will keep you informed every week as to what is [sic] happened.''

On November 14, 1957, plaintiffs' attorney replied in part, as follows, ''You are hereby advised on behalf of Mr. Luz

---

[1]Plaintiffs' attorney in answer to a question from the court stated that the building was worth $4,000. Plaintiff Arthur Luz in an unsworn comment in court also stated that it was worth $4,000. There was no oral testimony on the value of the building. In defendants' affidavit there is a reference to value, and there the estimate was $7,000.

that we cannot cooperate any further with you. The complaint was served upon you on September 17, 1957, and you have failed to follow out the conditions of settlement set forth in my letter of September 20, 1957. On October 21, 1957 you were advised that we would look to our legal remedies and such will now be done.''

On November 16, 1957, plaintiffs' attorney served a copy of the complaint and summons on Mrs. Lopes and informed her that the complaint was a copy of the one served on her husband on September 17, 1957, and that the plaintiffs would seek relief against her and her husband.

No answer was filed by defendants, and on December 6, 1957, plaintiffs made demand for entry of a default judgment. On December 10, 1957, default judgment quieting title to the property in plaintiffs and awarding $2,700 in damages to them was entered. On December 30, 1957, defendants noticed a motion under section 473 of the Code of Civil Procedure to set aside the default judgment. At the hearing on this motion defendant Ralph Lopes testified that, after receipt of the October 21, 1957, letter from plaintiffs' attorney, he talked to plaintiffs' attorney and requested a further extension of time so that he could sell the property in order to meet his obligations with the proceeds; that plaintiffs' attorney said he would not object if Lopes discussed these proposals with Arthur Luz; and that on the following day he talked to Luz who told him not to worry about the 10-day period for answering the complaint. Luz testified that he could not remember this conversation and that after the filing of the complaint he always referred Ralph Lopes to his attorney. Plaintiffs' attorney, by affidavit, indicated that he did not learn that the defendants were trying to sell the property until their letter of November 11, 1957.

Ralph Lopes also testified that on receiving the November 14, 1957, letter from plaintiffs' attorney, he talked to the latter about selling, and he was informed that he had no right to sell the property and was instructed to bring in any further offers. He also testified that on December 16, 1957, after hearing that he was to be dispossessed, he telephoned Arthur Luz who told him not to worry. Luz denied that this conversation occurred.

The trial court refused to set the default aside, and entered its order accordingly.

The defendants attack both the judgment and the order refusing to set aside the default. The first question presented

is whether or not, under the notice of appeal, the validity of the judgment and the validity of the order are both properly before us.

The notice of appeal was filed within time whether the judgment or order or both are involved. The question is, what was the scope of the notice of appeal? It reads as follows: "... defendants ... hereby appeal ... from an Order made and entered by the above entitled Court on January 28, 1958, in the above entitled action, denying appellants' petition for an order to set aside the default Decree Quieting Title entered against them by said Court in said action on December 10, 1957, in Book 76, page 309, of the records of the Superior Court of the State of California, in and for the County of Santa Clara, and from the whole of said Order; and from all orders and rulings made and entered by said Court which are adverse to them." There is no doubt that defendants properly appealed from the order refusing to set aside their default. The question is whether or not the language in the notice to the effect that defendants appeal from "all orders and rulings ... which are adverse to them," properly interpreted, included an appeal from the judgment, as well.[2] We think that it did.

Rule 1, subdivision (a) of the Rules on Appeal provides: "An appeal from a judgment of a superior court or from a particular part thereof is taken by filing with the clerk of that court a notice of appeal therefrom. The notice shall be signed by the appellant or by his attorney and shall be sufficient if it states in substance that the appellant appeals from a specified judgment or a particular part thereof. A notice of appeal shall be liberally construed in favor of its sufficiency."

Under this rule, and prior to its adoption, it is and has been the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced. There are many cases in which, under this rule, the

---

[2]In this state a defaulting party may appeal from a default judgment. This has been the law of California since 1850 when the case of *Stevens* v. *Ross*, 1 Cal. 94, was decided. (See also *Ricketson* v. *Compton*, 23 Cal. 636; *Hallock* v. *Jaudin*, 34 Cal. 167; *Howard* v. *Galloway*, 60 Cal. 10; *Swain* v. *Burnette*, 76 Cal. 299 [18 P. 394]; *Jameson* v. *Simonds Saw Co.*, 144 Cal. 3 [77 P. 662]; *Baxter* v. *Boege*, 173 Cal. 589 [160 P. 1072]; *Pickerill* v. *Strain*, 196 Cal. 683 [239 P. 323]; see cases collected and discussed 3 Cal.Jur.2d, § 70, p. 513; 2 Am.Jur., § 33, p. 869; 3 Freeman on Judgments (5th ed.), § 1301, p. 2700; 2 Stanbury, California Trial and Appellate Practice (1958), § 886, p. 125.)

word "judgment" has been interpreted to mean "order," and vice versa. Thus in *Adams* v. *Talbott*, 20 Cal.2d 415 [126 P.2d 347], the notice of appeal stated that the appeal was taken "from the judgment rendered in favor of the defendant." This notice was filed after the expiration of the time for an appeal from the judgment. It was held that since it was apparent what appellant was seeking to have reviewed, the notice even though it read "judgment" should be interpreted to mean that it referred to a subsequent appealable order. In the same way, and for the same reasons, in *Perry* v. *First Corporation*, 167 Cal. App.2d 359 [334 P.2d 299], where the notice of appeal described the "judgment" the court construed it as an appeal from a minute order. (See also *Holden* v. *California Emp. etc. Com.*, 101 Cal.App.2d 427 [225 P.2d 634].) The converse is also true. Notices of appeal describing an "order" have been construed to mean "judgment." Thus in *Collins* v. *City & County of San Francisco*, 112 Cal.App.2d 719 [247 P.2d 362], the notice of appeal described a minute order of a given date. It was construed as an appeal from a "judgment" of a different date. In *Evola* v. *Wendt Construction Co.*, 158 Cal.App.2d 658 [323 P.2d 158], the notice of appeal described the appeal as being taken from the order sustaining the demurrer without leave to amend. It was construed as an appeal from the judgment subsequently entered. (See also *Girard* v. *Monrovia City School Dist.*, 121 Cal.App.2d 737 [264 P.2d 115]; *Karrell* v. *Watson*, 116 Cal.App.2d 769 [254 P.2d 651, 255 P.2d 464].[3])

In the instant case, there is no showing that plaintiffs were or could have been misled or prejudiced because of the ambiguous language of the notice of appeal. In fact, quite the contrary appears. The notice of appeal first, properly and in detail, describes the order appealed from. Then it states that plaintiffs also appeal from "all orders and rulings . . . which are adverse to them." The only final "order" to which this could refer was the default judgment. If the notice had used the word "judgment" in place of "all orders" there would be no doubt at all as to the intent of plaintiffs. This is a proper case, under the authority of the cases already cited, *supra*, where the words "orders and rulings" should be interpreted to mean "judgment." Thus the present appeal is not only from the order denying the motion for relief from default, but also from the judgment.

■ The judgment in this case quieted the title of the plaintiffs, thus forfeiting the defendants' rights in the property, and awarded the plaintiffs $2,700 as damages. The award of damages, as shown by the findings, was made up of two items, one, an award of $1,700 as damages that accrued prior to the termination of the agreement, and the other for $1,000 for rental accruing after termination. So far as the judgment quiets plaintiffs' title and awards them $1,000 it is clearly correct. Defendants obviously were in default and wrongfully continued in possession after notice of termination of the contract. But the award of $1,700 was clearly in error. The judgment, in effect, gave the plaintiffs an award of damages for breach of the contract and also forfeited the rights of defendants under the contract. The two awards are inconsistent, and cannot stand. The proper rule was stated in *Cross* v. *Mayo*, 167 Cal. 594, 606 [140 P. 283], where the court stated: "It is to be borne in mind that this action was not one for the recovery of any money, but simply one to require defendant to pay the moneys due under the contract or be foreclosed of all rights under the contract. Manifestly defendant cannot properly be required to pay the amount for failure to pay which his rights under the contract are declared forfeited, or, to state it in different words, plaintiff cannot have both a forfeiture and enforcement of the contract at the same time. To sustain such a recovery here would be in effect to require defendant to partially perform his agreement of purchase, and at the same time foreclose all his rights under such agreement." (See also *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199]; *Security-First Nat. Bank* v. *Hauer*, 47 Cal.App.2d 302 [117 P.2d 952].)

Thus there is and can be no doubt that the judgment is erroneous insofar as it awards plaintiffs this sum of $1,700, and should be modified accordingly.

■ We turn now to a discussion of the order denying relief from default. It should first be mentioned that the record shows that the motion for relief from default applied both to the entry of the default and to the entry of the default judgment. Although the notice of motion is ambiguous in this regard it was so treated in the trial court, and should be so treated here. This being so, the problem involved in *Howard Greer etc. Originals* v. *Capritti*, 35 Cal.2d 886 [221 P.2d 937], is not before us.

Except for erroneously including the $1,700 item in its default judgment the trial court was justified in denying

the motion made under section 473 of the Code of Civil Procedure for relief from default. While this section is remedial and to be liberally construed (*Beckley* v. *Reclamation Board*, 48 Cal.2d 710 [312 P.2d 1098]; *Frank E. Beckett Co.* v. *Bobbitt*, 180 Cal.App.2d Supp. 921 [4 Cal.Rptr. 833]; *Estate of Nelson*, 127 Cal.App.2d 732 [274 P.2d 432]) the moving party must show "mistake, inadvertence, surprise or excusable neglect." As was said in *Elms* v. *Elms*, 72 Cal.App.2d 508, 513 [164 P.2d 936]: "It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied. . . . Courts neither act as guardian for incompetent parties nor for those who are grossly careless of their own affairs." The burden of proof on such a motion is on the moving party who must establish his position by a preponderance of the evidence. (*Etchepare* v. *Ehmke*, 137 Cal.App.2d 508 [290 P.2d 374]; *Bruskey* v. *Bruskey*, 4 Cal.App.2d 472 [41 P.2d 203]; *Caton* v. *Caton*, 131 Cal.App.2d 451 [280 P.2d 876].) It is for the trial court to determine all conflicts in the testimony or affidavits (*Husar* v. *Husar*, 48 Cal.App.2d 326 [119 P.2d 798]; *Penland* v. *Goodman*, 44 Cal.App.2d 14 [111 P.2d 913]) and if there is a conflict the determination of the trial court is conclusive on appeal (*Jones* v. *Lindsey*, 114 Cal.App.2d 237 [250 P.2d 153]; see also *Morgan* v. *Brothers of the C. Schools*, 34 Cal. App.2d 14 [92 P.2d 925]; *Sheffler* v. *Hutchings*, 124 Cal.App. 760 [13 P.2d 527]; *Taranto* v. *Dick*, 119 Cal.App. 161 [6 P.2d 334]; *Beard* v. *Beard*, 16 Cal.2d 645 [107 P.2d 385]; *Rackov* v. *Rackov*, 164 Cal.App.2d 566 [330 P.2d 926]).

In the instant case, the affidavits and testimony show that immediately after serving the complaint on defendant Ralph Lopes, who was in the real estate business, on September 17, 1957, plaintiffs conditionally agreed to a settlement but warned that failure to comply with its terms would result in plaintiffs proceeding for the relief demanded; that defendants defaulted on the settlement on October 15, 1957; that on October 21, 1957, plaintiffs, by letter advised defendants to file an answer within ten days; that on November 14, 1957, in answer to a letter from defendants, plaintiffs' attorney wrote that further cooperation was impossible and that plaintiffs

would look to their legal remedies; that on November 16, 1957, Mrs. Lopes was served with a copy of the complaint served on her husband in September and informed that plaintiffs would seek relief against both; and that on December 6, 1957, plaintiffs moved for entry of the default.

These facts do not show any mistake, inadvertence, surprise, or excusable neglect under section 473 of the Code of Civil Procedure. The defendants were aware of the fact that they had an opportunity to settle, that they had 10 days to file an answer, and that plaintiffs would not relinquish their legal rights. They were not misled. The trial court was justified in refusing to set aside the default or the default judgment.

Defendants make some argument that the default and judgment were entered because the plaintiffs misled the court, and were, in effect, guilty of fraud. ▆ Fraud is, of course, a ground for setting aside a default under section 473 of the Code of Civil Procedure (*Difani* v. *Riverside County Oil Co.,* 201 Cal. 210 [256 P. 210]; *In re Yoder,* 199 Cal. 699 [251 P. 205]). However, such an argument cannot properly be made on this appeal because the defendants not only failed to make such an argument in the trial court, but failed to produce any evidence to show that plaintiffs had concealed any facts from them. Counsel for defendants, in fact, conceded at the hearing that the actions of plaintiffs' counsel were "clearcut," "quite understandable" and that the action taken was in "good faith."

For these reasons the findings and conclusions are modified by striking therefrom all references to the item of $1,700, and the judgment is modified by reducing the award of damages from $2,700 to $1,000. As so modified the judgment is affirmed. The order denying relief from the default judgment as modified is affirmed. Each side shall bear their own costs on this appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., White, J., and Dooling, J., concurred.

Appellants' petition for a rehearing was denied January 18, 1961.