[No. B190168. Second Dist., Div. Eight. Feb. 28, 2008.]

JACK RUSSELL, Plaintiff and Appellant, v.
CHARRIE FOGLIO, Defendant and Respondent.

### COUNSEL

McPherson & Kalmansohn, McPherson & Associates, Edwin F. McPherson and Tracy B. Rane for Plaintiff and Appellant.

Cohen and Cohen, Evan S. Cohen and S. Martin Keleti for Defendant and Respondent.

### OPINION

**COOPER, P. J.**—Plaintiff Jack Russell appeals following the grant of defendant Charrie Foglio's special motion to strike his complaint for slander and false light invasion of privacy, under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute (undesignated section references are to the Code of Civil Procedure), and from the denial in part of his motion to tax costs, with respect to defendant's attorney fees. We conclude that plaintiff has failed to perfect an appeal from the anti-SLAPP order. We affirm the attorney fees order.

### FACTS

The material allegations of the complaint were as follows. In February 2003, plaintiff was leader of the band Great White, which underwent a catastrophe when pyrotechnic effects it employed at a Rhode Island nightclub ignited polyurethane wall and ceiling installations, precipitating a fire that caused extensive loss of life and injuries.

Shortly after the fire, plaintiff decided that the band would tour the United States performing, to raise money for victims of the fire. Defendant, who had

experience in the music industry and had known plaintiff for 20 years, was assigned by a management company to handle publicity for the band. Defendant also was deputized to work with a fire victims' fund, to which the band would be giving all profits from its tour.

Defendant allegedly performed poorly and dishonestly in various ways, and the management company terminated her. She then demanded that plaintiff fire the company and hire her as his personal manager. When plaintiff refused, defendant threatened that if she did not receive severance pay, she would tell the press or a Rhode Island grand jury that plaintiff and the head of the management company (Steinman) were embezzling money from the victims' fund. Defendant proceeded to claim, falsely, that plaintiff and Steinman were stealing money from the tour. She allegedly made such statements to the press, people in the music industry, and Rolling Stone magazine, and they were republished by CNN Headline News.

The complaint alleged that defendant's statements were false, defamatory on their face, and made with knowledge or reckless disregard of their falsity (hereafter constitutional malice). As a result, plaintiff suffered damages personally, and several tour concerts were cancelled by their venues. Plaintiff alleged malice and prayed punitive damages. The second cause of action reiterated the first, and alleged that defendant's statements had placed plaintiff in a false light before the public. A third cause sought injunctive relief against further defamatory statements.

Defendant moved to strike the complaint under section 425.16, subdivision (b)(1). She averred that her alleged statements came within the free speech and public interest protections of section 425.16, subdivision (e)(4), and that many of the complaint's charges were themselves false.

In opposition to the motion, plaintiff submitted declarations by himself, Steinman, a former member of the band (Lardie), and the victims' fund's president (Potvin). The latter two testified, respectively, that defendant had told them that plaintiff was stealing and embezzling from the fund. Among other things, Steinman recounted that defendant had shared all of the tour's accounting records. He also stated that defendant had falsely told the fund and the press that he and plaintiff were stealing from the fund. Plaintiff testified to defendant's threat to claim theft unless she were paid severance.

Principally based on Steinman's declaration regarding defendant's knowledge of the tour's finances, plaintiff argued that defendant had made her false accusations with knowledge or reckless disregard of their falsity.

Defendant, now in propria persona, filed extensive evidence in reply, including a declaration by a member of the fund's board. Plaintiff filed objections to much of this evidence, which included magazine and Internet articles.

On March 4, 2005, the court rendered its order granting defendant's motion to strike. The court ruled that the statements allegedly made to Steinman and Potvin were privileged under Civil Code section 47, subdivision (c), which concerns communications between interested persons, without malice.[1] Absence of such malice was established by reason of the court's conclusion that plaintiff had not shown constitutional malice by clear and convincing evidence. The court ruled that the claim that defendant had made her statements because she had not been paid severance was insufficient to establish constitutional malice. The court stated the statement to Lardie had not been believed, and therefore had not caused special damages.

The 12-page "Order on Submitted Motion" was signed by the court, file-stamped, and accompanied by a clerk's endorsement of the date of mailing to the parties. The order concluded, "Defendant is ordered to submit a proposed form of judgment within 15 days." Defendant did not submit any form of judgment in response.

Plaintiff proceeded to file a motion for reconsideration, on March 14, 2005. Plaintiff offered further evidence, and argued he could sustain his burden of showing "minimal merit" as to each element of his slander claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, 95 & fn. 11 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

Defendant again filed voluminous opposition, to which plaintiff filed numerous objections. Plaintiff then filed further declarations. The court held two hearings, the second being an evidentiary one concerning plaintiff's claim that defendant had submitted a forged declaration by the band's former tour manager. At these hearings, defendant was represented by new counsel, Keith Bray.

On June 9, 2005, the court filed its order denying the motion for reconsideration, on the basis the evidence plaintiff had tendered had been available for

---

[1] Steinman actually had not claimed that defendant had published her charges of theft to him.

the original motion. (See § 1008, subd. (a).) The court ruled for defendant on the forgery question. The order stated that defendant could file a new bill of costs, to account for her attorney fees and costs for the reconsideration motion. The order concluded, "Defendant is to submit a form of judgment within 10 days." No such form was submitted.

On July 9, 2005, defendant's attorney, Bray, filed a memorandum of costs, claiming attorney fees of $10,140, witness fees of $3,090 for a questioned-documents examiner, and $1,500 for a private investigator.

In support of the claimed attorney fees, Bray attached his declaration, stating he had been retained by defendant on April 29, 2005, three days before the first reconsideration hearing, at $300 per hour. He had spent a total of 33.8 hours on the case, about half of that in attending the two reconsideration hearings, and the rest principally in interviewing defendant and witnesses in preparation, and attending an earlier hearing on costs.

Plaintiff moved to tax costs. He argued that (1) the expert's fees were statutorily unrecoverable (§ 1033.5, subd. (b)(1)); (2) the same was true of investigator's fees (§ 1033.5, subds. (b)(2), (c)(2)); and (3) the attorney fees were unreasonable and excessive. Plaintiff observed that Bray had been admitted to the bar in June 2002, and had graduated from an apparently unaccredited law school. Plaintiff also submitted declarations from partners at two law firms. One stated that 2002 admittees at his firm were generally billed at $135 to $150 per hour, and that a law firm rate "anywhere near $300 per hour" for attorneys of that vintage was unknown to him. The other declarant stated that he too was unaware of any firm billing that rate for 2002 admittees; that it would be unreasonable; and that at no firm at which he had been a principal had lawyers in practice less than four years been billed at over $175 per hour.

Responding at the hearing, Bray averred that he was an independent family law practitioner who had substantial trial experience (which he described) and overall experience and responsibility greater than and different from law firm associates of two years. He also represented that $300 was his normal rate, which his clients agreed to.

The trial court granted the motion to tax with respect to the expert's and investigator's fees, but denied it as to the attorney fees. The court found Bray's experience, the time constraint under which he undertook defendant's representation, his performance in defeating the forgery claim, and defendant's agreement to the $300 per hour fee all supported the fees claimed. The court also awarded fees for three further hours, or $900, for the hearing.

On November 7, 2005, the court filed a "judgment," submitted by Bray, which adjudged the rulings on the motion to tax costs. On March 27, 2006,

plaintiff filed a notice of appeal from this judgment. The notice of appeal recited that defendant had served the judgment the preceding month, and it attached and incorporated a copy of that judgment. This was the only notice of appeal plaintiff filed in the case.

## DISCUSSION

1. *Plaintiff Has Failed to Appeal from the Anti-SLAPP Order.*

■ Plaintiff's arguments on appeal seek review and reversal of the anti-SLAPP order striking his complaint, as well as the subsequent "judgment" denying the motion to tax costs with respect to defendant's attorney fees. However, plaintiff's notice of appeal, upon which this appeal is based, addresses only the judgment regarding costs. Given the absence of a notice of appeal from the order granting the motion to strike, and that the notice of appeal before us was filed more than a year after the motion was granted, we requested and received briefing from the parties regarding whether we have jurisdiction to review the anti-SLAPP order. We conclude that we do not.

Plaintiff's time to commence an appeal from the order granting the anti-SLAPP motion expired well before plaintiff filed its only notice of appeal in March of 2006. The trial court granted the motion to strike on March 4, 2005. That order was specifically, statutorily appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) On the same date, the superior court clerk mailed a file-stamped copy of the order to plaintiff. Under California Rules of Court, former rule 2(a)(1), (f) (8.104(a), (f)),[2] plaintiff had 60 days from this notification, or until May 3, 2005, in which to file a notice of appeal from the order. Because plaintiff filed a motion for reconsideration, the time for filing the notice of appeal was extended by former rule 3(d)(2) (8.108(e)(2)) to June 13, 2005 (90 days after the motion to reconsider was filed). Plaintiff did not, however, file any notice of appeal before that time expired—or until over 10 months later, when the notice of appeal regarding costs was filed.

■ Plaintiff disputes this analysis on several premises, but none of them is valid. First, plaintiff argues that mailing of the March 4, 2005 order did not commence the time for appeal under former rule 2(a)(1) (8.104(a)), because the order was not entitled "Notice of Entry," as the rule states. (Cf. *Sunset Millennium Associates, LLC v. Le Songe, LLC* (2006) 138 Cal.App.4th 256 [41 Cal.Rptr.3d 273].) But the "Notice of Entry" requirement is only an alternative one: under former rule 2(a)(1) (8.104(a)), the time for notice of appeal

---

[2] The California Rules of Court were renumbered after the proceedings below. Using the term "rule," we cite the former rules, which governed, with parenthetical notation of the present rule numbers.

runs from the clerk's mailing of either "a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was mailed." Here plaintiff was mailed a file-stamped copy of the order granting the motion to strike.[3]

 Plaintiff further argues that the court's March 4, 2005 order granting the motion to strike was not an appealable order, because the order directed defendant to prepare a form of judgment, and she did not do so. Plaintiff relies primarily on former rule 2(d)(2) (8.104(d)(2)), which provides that for purposes of former rule 2 (8.104) the date of entry of an appealable order, "if the minute order directs that a written order be prepared . . . is the date the signed order is filed." Assuming arguendo that the present order came within this provision, the rule would not deprive the order of appealability. What former rule 2(d)(2) (8.104(d)(2)) does is demarcate the time of entry of an appealable order, for purposes of that rule. It does not purport to determine what is appealable; indeed, it applies by its terms to appealable orders. (See *In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 685–686 [36 Cal.Rptr.3d 286] [minute order statutorily appealable; written order set time of entry].)

Moreover, the order granting the motion to strike did not come within the quoted language of former rule 2(d)(2) (8.104(d)(2)). The order was not a minute order, but a lengthy signed order. There was no need for a further signed order to finalize the adjudication. And in fact, the order directed that defendant prepare not a further, more formal order, but a judgment. That was what should have followed, the court having granted a motion to strike plaintiff's entire complaint. (Cf. *Sunset Millennium Associates, LLC v. Le Songe, LLC, supra,* 138 Cal.App.4th at p. 258 ["The granting of the Code of Civil Procedure section 425.16 special motion to strike terminated the entire lawsuit as to defendant. Defense counsel submitted a proposed judgment . . . ."].) Although such a judgment would itself have been appealable, so was the order granting the motion to strike, by the terms of sections 425.16, subdivision (j) and 904.1, subdivision (a)(13).[4]

The time for filing an appeal from the anti-SLAPP order thus expired, long before plaintiff did file a notice of appeal—not from that order, but from the costs order. Plaintiff proposes certain means to permit that appeal to include an appeal from the anti-SLAPP order, but they are not appropriate.

---

[3] Plaintiff observes that not until later did he receive a copy of a document entitled "judgment" (the judgment regarding costs). But former rule 2(f) (8.104(f)) provides that as used in rule 2(a) (8.104(a)), " 'judgment' includes an appealable order if the appeal is from an appealable order."

[4] Because the order was not preliminary to a further order granting defendant's anti-SLAPP motion, *Herrscher v. Herrscher* (1953) 41 Cal.2d 300 [259 P.2d 901], cited by plaintiff, is not on point.

First, plaintiff suggests that the appeal may be saved by amending the judgment regarding costs to include denial of the anti-SLAPP order. Plaintiff bases this request on cases that have amended incomplete and hence nonappealable judgments to render them appealable. (E.g., *Gombos v. Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933].) But the problem here is not the absence of an appealable order granting the motion to strike. As we have explained, there was one, but plaintiff did not timely appeal from it.

Second, plaintiff invokes the doctrine that a notice of appeal should be liberally construed. (E.g., former rule 1(a)(2) (8.100(a)(2)).) But as stated in plaintiff's lead authority, "notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from . . . ." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289].) This doctrine applies primarily, as in that case, where the notice of appeal has misdescribed the judgment or order sought to be appealed from. Here, however, plaintiff's notice of appeal addressed and explicitly described—to the point of attaching a copy—only the judgment regarding costs. It would be beyond liberal construction to view that notice of appeal as relating to a further and different order, rendered a year previously. Moreover, even if plaintiff's notice of appeal were construed as directed at the anti-SLAPP order, the appeal from it would be untimely and would have to be dismissed.

Accordingly, we are unable to find that an appeal from the anti-SLAPP order is properly before us.

### 2. *Attorney Fees.*

The award of defendant's attorney fees, recoverable under section 425.16, subdivision (c), is subject to review under established rules. "The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time involved. [Citation.]" (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448 [121 Cal.Rptr.2d 275]; accord, *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 [95 Cal.Rptr.2d 198, 997 P.2d 511].) The trial court possesses personal expertise in the value of the legal services rendered in the case before it. (*PLCM Group, supra,* at p. 1096.) On appeal, a fee award is reviewed for abuse of discretion. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 686 [43 Cal.Rptr.3d 148].)

Plaintiff attacks the award for Attorney Bray on grounds the $300 per hour rate claimed and allowed was excessive. Plaintiff so contends based on the facts that Bray had been a lawyer only since June 2002, that he had graduated

from an unaccredited law school, and that his experience was in family law as opposed to defamation. These facts do not establish an abuse of discretion in the trial court's ruling.

From the standpoint of Bray's capability, experience, and performance, the identity of his law school made no difference. In the same respects, that Bray had become a lawyer two years 11 months before he undertook the case also was not dispositive.[5] The trial court recognized Bray's representation that he brought to the case far more extensive trial experience than an average junior associate at a law firm would have had. That Bray's experience had arisen in the family law context was also not discrediting. What the court perceived as relevant about that experience was its practical extent. The court referred to Bray's "family law experience" simply as shorthand for his in-court experience.

Plaintiff's arguments also fail to take into account the court's observations concerning the quality of Bray's performance and the time constraints under which he undertook representation of defendant. These factors supported the court's determination of the value of counsel's work.

Ultimately, while expressing awareness of plaintiff's submission regarding junior associates' billing rates, the court concluded that Bray's experience, the exigency of the case, and "the demonstrated level of performance by counsel" justified the hourly fee level. Given all the circumstances, that ruling was not an abuse of discretion.

## DISPOSITION

The judgment regarding costs is affirmed. The parties shall bear their own costs on appeal.

Egerton, J.,[*] concurred.

**RUBIN, J.**—I concur.

The plain meanings of Code of Civil Procedure section 425.16, subdivision (i) (formerly subd. (j)) and section 904.1, subdivision (a)(13) made the trial court's order granting respondent's motion to strike immediately appealable. I therefore agree with the majority that, because the appeal here was untimely, we do not have jurisdiction to reach the merits of the

---

[5] It is incorrect for plaintiff to refer to Bray as a "second-year" lawyer. Bray had more than three years' licensure when he handled the crucial evidentiary hearing on reconsideration.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

anti-SLAPP (strategic lawsuit against public participation) order. Our inability to address the merits may be an example of an unintended consequence that the Legislature did not anticipate when it made granting a motion to strike under the anti-SLAPP law an immediately appealable order. I therefore write this separate concurrence to suggest that the Legislature may wish to consider amending the statutes involving such an appeal.

It makes sense that *denial* of a motion to strike a complaint under the anti-SLAPP law is immediately appealable. Forcing a defendant to wait until a final judgment that might be months or years away arguably would frustrate the anti-SLAPP statute's purpose, which is to expeditiously end lawsuits that chill public participation. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 194 [25 Cal.Rptr.3d 298, 106 P.3d 958] ["The Legislature found it necessary to enact subdivision (j) because, without the ability to appeal, a SLAPP 'defendant will have to incur the cost of a lawsuit before having his or her right to free speech vindicated' "].) As the Assembly committee report discussing appeals under the anti-SLAPP statute noted: "This bill furthers the ·purpose of the Anti-SLAPP Law . . . by allowing the defendant to immediately appeal a denial of a special motion to strike. Without this ability, a defendant will have to incur the cost of a lawsuit before having his or her right to free speech vindicated. When a meritorious anti-SLAPP motion is denied, the defendant, under current law, has only two options. The first is to file a writ of [mandate], which is discretionary and rarely granted. The second is to defend the lawsuit. If the defendant wins, the Anti-SLAPP Law is useless and has failed to protect the defendant's constitutional rights." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1675 (1999–2000 Reg. Sess.) Apr. 20, 1999, pp. 2–3.)

A plaintiff in SLAPP litigation occupies a different position than a defendant, and few plaintiffs, if any, are likely to have interests the anti-SLAPP law was designed to protect. Recall that the plaintiff initiates the lawsuit—it is the defendant who claims the lawsuit chills the defendant's constitutional rights. There is no particular reason a plaintiff at the losing end of a successful anti-SLAPP motion to strike has any interests greater or more pressing than any other plaintiff who loses a dispositive pretrial motion, such as a demurrer or motion for summary adjudication or judgment. The plaintiff may be unhappy with the pretrial result, but, unlike a defendant subject to a SLAPP complaint, such a plaintiff bears no obviously greater burden in being forced like other plaintiffs to wait until the final judgment to appeal.

The legislative history of the appeal provision of the anti-SLAPP law does not illuminate why the Legislature made orders *granting* a motion to strike immediately appealable, other perhaps than to offer balance between plaintiffs and defendants. As originally introduced in the Assembly Judiciary Committee, the appeal provision addressed only denial of a motion to strike. (Assem.

Bill No. 1675, subd. (j) (1999–2000 Reg. Sess.); Stats. 1999, ch. 960.) But several months later, the Senate Judiciary Committee amended the bill to make an order granting a motion to strike appealable. In discussing its amendment, the Senate report recited the reasons the Assembly had found for making *denials* immediately appealable. The Senate report then added: "The author is submitting amendments in Committee to clarify that the right to appeal would apply to motions granted or denied in order to assure that both the plaintiff and defendant are given equal rights to appeal an adverse order"—in other words, balance. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1675 (1999–2000 Reg. Sess.) as amended May 28, 1999, p. 4.)

In reaching for balance, the Legislature may have grabbed hold of unintended consequences, instead. One of two scenarios typically unfolds after a trial court *grants* an anti-SLAPP motion to strike. Under the first scenario, the court dismisses the entire complaint, freeing the defendant to move for its attorney's fees and an eventual final judgment; that scenario is the one that happened here. Under the second scenario, some causes of action remain and the case proceeds on those claims toward an eventual final judgment (which may include attorney's fees for the successful motion to strike). Under either scenario, no public policy reason exists to justify the cost to the parties and the courts of two separate appeals—one from the granting of the motion to strike, and a second from the attorney's fee order and final judgment. Moreover, splitting the proceedings into two appeals creates a trap for the unwary, who may lose their right to appeal from the order granting the motion to strike while they await the final judgment. This is especially true in cases in which the trial court, as what happened here, grants the motion to strike the entire complaint. It is hard to imagine any benefit to the plaintiff in requiring it to appeal before final judgment is entitled.

And the trap is not limited to the unwary. At least one published decision shows even highly regarded and experienced counsel can overlook that an order granting a motion to strike is immediately appealable. In that decision, *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242 [49 Cal.Rptr.3d 861], the plaintiff's counsel sued Google. The trial court granted Google's motion to strike the complaint under the anti-SLAPP statute, effectively ending the lawsuit. (*Id.* at p. 1245.) A few months later, the trial court awarded Google its attorney's fees and costs and entered judgment in its favor. The plaintiff appealed from the final judgment. On review, the appellate court found the appeal was untimely as to the motion to strike, and refused to address the merits of the order granting the motion. (*Id.* at pp. 1246–1247.) Because the statutory language was plain, the *Maughan*

court, like the majority here, correctly applied the law governing the timing of an appeal from an order granting a motion to strike a SLAPP complaint. I respectfully suggest, however, that the Legislature consider changing the statute.

A petition for a rehearing was denied March 26, 2008.