Filed 10/31/13  Wheeler Ridge Farms v. Wildlands Conservancy CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WHEELER RIDGE FARMS LLC et al., | F063518 |
| Plaintiffs and Appellants, | |
| v. | (Kern Super. Ct. No. S-1500-CV 255842) |
| THE WILDLANDS CONSERVANCY, INC. et al. | **OPINION** |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Kern County.  William D. Palmer, Judge.

Sheppard, Mullin, Richter & Hampton, Gregory A. Long, Polly Towill, and Alison N. Kleaver for Plaintiffs and Appellants.

Clifford & Brown, Daniel T. Clifford and John R. Szewczyk for Defendants and Respondents.

-ooOoo-

# I.

## INTRODUCTION

This case ostensibly settled almost six years ago.[1]  A "settlement agreement" was read on the record, and the parties agreed the court retained jurisdiction under Code of Civil Procedure section 664.6.[2]  Arguably, there was no explicit agreement on certain material terms.  Nonetheless, the court entered the settlement as a judgment.  (See § 664.6.)  The judgment simply attached a transcript of the oral settlement language.

Plaintiffs made multiple postjudgment motions seeking orders to "enforce" the settlement.  The motions were purportedly made pursuant to section 664.6  After one of those motions, the court entered an order requiring plaintiffs to execute a contract, among other things.  Plaintiffs challenge the order as outside the court's authority under section 664.6.

We agree that section 664.6 does not support the July 29, 2011, order because it " '*create*[*d*] … material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' [Citation.]"  (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176, original italics, (*Hernandez*).)  We accordingly reverse that order.

In their briefing, plaintiffs challenge another, similar postjudgment order.  We conclude that order is not properly before us.

---

[1] As to the following parties:  The Wildlands Conservancy, Inc.; Wheeler Ridge Farms LLC and Dale Poe Development Corporation.

[2] All subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

## II.

## FACTS

In the 1980s, Dale Poe purchased more than 100,000 acres of land referred to as the San Emidio Ranch (the "Ranch"[3]). The property had a water delivery system on it which was used to facilitate cattle grazing. The Wildlands Conservancy (Wildlands) purchased a portion of the Ranch in the mid-1990s. Thereafter, both Wildlands and Poe leased their combined property to a cattleman named Kirk Thomas. Thomas raised cattle on the entire property, and the water delivery system functioned as it had previously. Eventually, Thomas ceased leasing the property.

A dispute arose regarding water delivery. Plaintiffs Wheeler Ridge Farms LLC and Dale Poe Development Corporation (plaintiffs) filed a complaint in superior court against Wildlands. The complaint alleged Wildlands improperly "shut off all water" from the water system to Wheeler Ridge's portions of various pastures. Plaintiffs sought injunctive, equitable, declaratory and compensatory relief. Wildlands answered with a general denial and several affirmative defenses.

### A. SETTLEMENT AGREEMENT LANGUAGE

Plaintiffs and Wildlands ostensibly settled at a mandatory settlement conference on November 30, 2007. The settlement was placed on the record. The settlement included two primary components: a land exchange and a purported resolution of the water dispute. The latter component is most relevant to this appeal.

Counsel for Wildlands recited the settlement as to the water issue as follows:

> "The second issue that the parties have resolved is regarding the provision of water from the Wildlands Conservancy to Wheeler Ridge Farms and its successors. The Wildlands Conservancy has agreed to provide 3 million gallons of water per year to the boundary line of the

---

[3] Plaintiff's brief indicates the Ranch was subsequently purchased by Dale Poe Development Corporation and that Wheeler Ridge Farms LLC is that entity's successor.

Wheeler Ridge Farms land. The water shall be used for the Wheeler Ridge Farms property only and not be used for any purposes anywhere outside of the property currently owned by Wheeler Ridge Farms. Water will be provided by the Wildlands Conservancy to a tank. On an annual basis, the water will be accessible by Wheeler Ridge Farms as needed.

"In the event – the obligation will be perpetual. And in the event of any catastrophic event such as a significant climate change, earthquake, extended drought, or other act of God of force majeure, the parties will – or the obligation will be alleviated. And the parties are going to – have agreed to work together in good faith over the next ten days to come up with actual contractual language that identifies this – better identifies and articulates the catastrophic event that will trigger the alleviation of this obligation."

The court asked whether plaintiffs' counsel had anything to add to the recitation. He responded:

"I believe that the obligation to deliver the water, your Honor, will run with the land. And without buying into the list of examples that [Wildlands' counsel] attached to the word [*sic*] 'catastrophic event,' I do agree that we have agreed to a catastrophic event suspending the obligation due to low water during the pendency of such event but not ending it forever.

"So, for instance, if a drought were to occur for a period of two or three years that made it impossible, then during that period of drought, the obligation would be lifted, but it would then go back into place if the ten-year rains came."

The court then stated: "And I suspect it would be a right that would be appurtenant to the Wheeler Ridge property and would be a burden on the Wildlands property. It doesn't mean that should there be one of those catastrophic events that Wildlands would have any obligation to truck water in." Plaintiffs' counsel responded, "Correct.…"[4]

---

[4] There was no settlement language relating to water issues beyond what we discuss in this portion of our opinion.

4.

Plaintiffs and Wildlands agreed to the recited settlement on the record. The parties also agreed the court could retain jurisdiction under Code of Civil Procedure section 664.6.

## B. PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT

On August 15, 2008, plaintiffs filed a motion to enforce the settlement. (§ 664.6.) On November 14, 2008, the court granted the motion. The court signed the proposed judgment submitted by Wildlands's counsel. The substantive portion of the judgment states: "IT IS ORDERED that the motion be, and it hereby is, granted and judgment is hereby entered consistent with the stipulated settlement entered on the record before Department 6 of this Court on November 30, 2007, reflected in the transcript attached hereto as Exhibit A and the map attached hereto as Exhibit B, all of which are incorporated herein by this reference."

## C. PLAINTIFFS' MOTION TO "ENFORCE JUDGMENT"

On May 19, 2009, plaintiffs filed a "motion to enforce judgment." (§ 664.6) The motion alleged the parties had been unable to agree on the contractual language contemplated by the settlement. It further contended that Wheeler Ridge was not receiving the "the agreed upon water." The motion sought an order requiring Wildlands to execute a Water Service Agreement drafted by Wheeler Ridge.

Wildlands opposed the motion. Wildlands claimed the court lacked authority under section 664.6 to order Wildlands to execute the Water Service Agreement drafted by Wheeler Ridge because it contained terms not in the settlement.

## D. TRIAL COURT'S APRIL 10, 2010, ORDER

The court held multiple hearings on the motion and received testimony. Eventually the court issued an order dated April 10, 2010. The court found that the judgment previously entered was "clear on its face" and that "no extrinsic evidence is necessary to its interpretation." The court ordered:

"1. The Wildlands Conservancy, Inc. is obligated by the Judgment to deliver to Wheeler Ridge Farms, LLC and its successors three (3) million gallons of water per calendar year to the boundary line of the Wheeler Ridge Farms land as adjusted by the terms of the Settlement Agreement and Judgment.  The water is to be placed into an existing red and white checkered tank located on the Wildlands Conservancy property prior to the delivery to the property line.  The three (3) million gallons per year will be accessible to Wheeler Ridge Farms as needed and shall be delivered with a minimum delivery rate of 5.71 gallons.  The Judgment does not require that the pipeline used to deliver the water be of a particular material or diameter.

"2. The Wildlands Conservancy shall make the water available to Wheeler Ridge Farms at the agreed-to point north of the Wheeler Ridge Maricopa Water Storage District Turnout 12P14 on the new property line which will exist following the exchange of property described in the Judgment, within five (5) days of the date of this Order.

"3. The cost of delivering the water is, at all times, to be the responsibility of the Wildlands Conservancy, Inc.

"4. The obligation of the Wildlands Conservancy to deliver the water is a burden on all of its property which was owned at the time the Settlement Agreement was entered into, or which was agreed to be transferred to the Wildlands Conservancy pursuant to the terms of the Settlement Agreement and the Judgment.  That burden is not limited to any subset of the property nor to any particular source of water.  The obligation to deliver the water is a benefit to the property owned by Wheeler Ridge Farms, LLC at the date of the Settlement Agreement and to that property to be transferred by the Wildlands Conservancy to Wheeler Ridge Farms, LLC pursuant to the terms of the Settlement Agreement and Judgment. Both the burden and the benefit run with the land.

"5. Both parties are ordered to execute escrow instructions for the exchange and transfer of the property described in this Judgment within ten (10) business days of this Order.  The parties are further ordered to close escrow … within thirty (30) days of the date of this Order."

6.

### E. PLAINTIFFS REQUEST COURT ORDER COMPELLING WILDLANDS TO SIGN WATER SERVICES AGREEMENT

On June 10, 2011, plaintiffs again requested the court order Wildlands to sign the Water Services Agreement.[5] Plaintiffs alleged that Wildlands has no legal right to use the red and white checkered tank referenced in the court's prior order. Thus, plaintiffs urged it was Wildlands's responsibility "to provide another tank near the location of the existing tank, and in particular at the same elevation as the existing tank, to allow for gravity fed delivery of the water to the Wheeler Ridge property.…"

Wildlands again opposed plaintiffs' request. They argued that the Water Services Agreement proposed by plaintiffs went beyond the terms of the settlement.

### F. TRIAL COURT'S JULY 29, 2011, ORDER

The court issued an order dated July 29, 2011, from which plaintiffs presently appeal. The order is entitled "Order Modifying Order Dated April 10, 2010," and contains much of the same language from the April 10, 2010, order it purportedly modifies.

Again the court found that the judgment previously entered was "clear on its face" and that "no extrinsic evidence is necessary to its interpretation." The order went on to "modify" the April 10, 2010, order in significant ways.

The July 29, 2011, order required the parties to execute an attached easement and a Water Service Agreement. It also clarified Wildlands's obligation as only requiring delivery of the water to a literal point on the property (not a tank).[6] While the order

---

[5] The request was presented in a filing entitled "Proposed Easement and Water Service Agreement."

[6] The delivery point is described in an exhibit to the court's July 29, 2011, order. That description states, in part: "Being a point on the east line of Lot 1 of Lot Line Adjustment 17-08 recorded as a certificate of compliance in Document No. 0209133423 of official records at the Kern County Recorder's Office;…" (Capitalization changed from original.)

retained the requirement that Wildlands bear the cost of delivering the water to the delivery point, it added that Wheeler Ridge Farms was responsible for costs of receiving the water at the delivery point. The order also retained the three million gallon figure.

Plaintiffs now appeal from the July 29, 2011, order. [7]

## III.

## DISCUSSION

### A. SUMMARY

Plaintiffs' sole contention on appeal is that the trial court acted without jurisdiction when it issued the April 10, 2010, and July 29, 2011, orders. Plaintiffs argue those orders are void and should be vacated. We agree the July 29, 2011, order is void because it imposes different terms than the settlement agreement. We do not address the validity of the April 10, 2010, order because it is not properly before us on this appeal.

" ' 'The general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered. However, it may not amend such a judgment to substantially modify it or materially alter the rights of the parties under its authority to correct clerical error. [Citations.]' ' [Citation.]" (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 43.) Plaintiffs contend this general rule applies and the postjudgment orders are therefore void. Defendants contend that "the trial court held continuing jurisdiction pursuant to the express terms of Code of Civil Procedure Section 664.6 to act as it did in this matter." As we will explain, section 664.6 can not support the July 29, 2011, order. None of the defendants' additional contentions support the July 29, 2011, order, which we now reverse.

---

[7] Defendants cross-appealed. The cross-appeal was dismissed on February 27, 2012, pursuant to a stipulation.

**B. STANDARD OF REVIEW**

We review section 664.6 orders de novo for errors of law. (See *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 35. See also *Weinstein v. Rocha* (2012) 208 Cal.App.4th 92, 96.) Here, the trial court interpreted the settlement agreement "based solely upon its terms."[8] (See *Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1123-1124 (*Canaan*).) Therefore, we do not defer to the trial court's construction of the settlement agreement. (See *ibid*.) "Our review of the trial court's interpretation of the oral settlement agreement is … governed by the settled rule that an appellate court is not bound by a construction of a contract based solely upon its terms without the aid of any extrinsic evidence. [Citation] 'Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.' [Citation.]" (*Ibid*.)

**C. SECTION 664.6 DOES NOT PERMIT THE COURT TO IMPOSE TERMS DIFFERENT THAN THOSE CONTAINED IN THE SETTLEMENT AGREEMENT**

"Code of Civil Procedure section 664.6 provides a summary procedure to enforce a settlement agreement by entering judgment pursuant to the terms of the settlement. [Citation.]" (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182.) Section 664.6 allows the court to retain jurisdiction for this limited, specific purpose (i.e., "to enforce the settlement" (§ 664.6)). "[T]his reservation simply grants *the parties* a streamlined

---

[8] The trial court's July 29, 2011, order states: "The Court finds that the Judgment that has been entered is clear on its face and that no extrinsic evidence is necessary to its interpretation." The judgment itself was merely an incorporation of the transcript of the settlement agreement and a map. Thus, it is clear extrinsic evidence was not necessary for the trial court's interpretation of the judgment and, therefore, the settlement agreement.

9.

procedure to enforce an agreement they made between themselves." (*Hernandez*, *supra*, 126 Cal.App.4th at p. 1175, italics in original.)

"The power of the trial court under Code of Civil Procedure section 664.6 … is extremely limited.…" (*Hernandez*, *supra*, 126 Cal.App.4th at p. 1176.) " 'Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' [Citation]" (*Ibid.*, original italics.) "The court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement.…" (*Ibid.*) "Neither this court nor the superior court can rewrite the oral settlement agreement or add what was omitted. [Citations.]" (*Canaan*, *supra*, 211 Cal.App.4th at p. 1126.)

We must determine whether the July 29, 2011, order fell within the scope of the trial court's authority under section 664.6.**9** That is, did the court " 'enter the terms of a settlement agreement as a judgment' " (*Hernandez*, *supra*, 126 Cal.App.4th at p. 1176), or did it impermissibly impose "different terms than those contained in [the] settlement agreement"? (*Ibid.*)

We conclude the court's order imposed a number of terms that were "different … than those contained in their settlement agreement." (*Hernandez*, *supra*, 126 Cal.App.4th at p. 1176.) The order required plaintiffs to execute an Easement and Water Service Agreement attached to the order (the EWSA). In paragraph 2.1, the EWSA provided that

---

**9** At oral argument, plaintiffs' counsel argued that section 664.6 becomes completely irrelevant once the settlement is entered as a judgment. Given our resolution of the issue, we need not address this particular contention. Whether pre or postjudgment, section 664.6 does not allow a trial court to add or change terms of a settlement agreement. This point of law alone is sufficient.

10.

plaintiffs would have "first priority and highest claim" to available water until the water deliver obligation is satisfied each year. However, in subdivision (c) of that paragraph, the EWSA provides that plaintiffs' claim to the water was "subject … to" "[t]he use and consumption of Water … by [Wildlands] or its invitees, licensees or tenants consistent with the historical use of Water by such parties as of the date of the Original Judgment." This substantially departs from the settlement agreement, which did not subordinate Wildlands's water delivery obligation to anyone's "historical use" of the water. Rather, the agreement provided that Wildlands would "provide 3 million gallons of water per year to the boundary line of the Wheeler Ridge Farms['] land." The settlement describes Wildlands water delivery obligation as "perpetual" and provides for a single exception regarding catastrophic events. Nothing even remotely similar to paragraph 2.1(c) of the EWSA is found in the language of the oral settlement agreement. (See § II A.)

The EWSA contains other provisions that are foreign to the settlement agreement. The EWSA provides: "Except for the Water Delivery Obligation and the Easement, [Wheeler Ridge Farms, LLC] acknowledges and agrees that it has no interest, whether legal or equitable, in the water rights appurtenant to the [Wildlands's] property, and specifically disclaims any such interest .…" And, in a separate section, the EWSA requires that the water must be delivered at a rate equal to or greater than 5.71 gallons per minute. Again, the settlement agreement contained no such provisions, see § II A, *ante*, and the court had no authority to "rewrite the oral settlement agreement or add what was omitted." (*Canaan*, *supra*, 211 Cal.App.4th at p. 1126.)

Therefore, we reject Wildlands's argument that the July 29, 2011, order merely conformed the judgment to the terms of the settlement. As outlined above, the order adds terms that are nowhere to be found in the settlement language.

Moreover, the judgment itself was merely an incorporation of the settlement language. It is illogical that new, additional terms can conform two documents that already contain identical language.

11.

## D. WILDLANDS'S CONTENTION REGARDING INCOMPLETENESS OF SETTLEMENT UNDERMINES THE JUDGMENT AND THE POSTJUDGMENT ORDERS PREDICATED THEREON

Wildlands defends the order by arguing "the trial court was faced with the need to provide additional meaning to certain aspects of the negotiated settlement. The existing judgment did not specify all of the various different procedures, processes and terms which needed to be performed, nor how those procedures, processes and terms were to be performed or otherwise implement[ed]. In order to allow enforcement, all material terms needed to be defined with clarity .…" Wildlands notes the settlement "inherently left open the need for further negotiations on key terms and conditions."

This argument does not advance Wildlands's cause on appeal. "A settlement is enforceable under section 664.6 only if the parties agreed to all material settlement terms. [Citations.]" (*Hines v. Lukes*, *supra*, 167 Cal.App.4th at p. 1182, fn. omitted. See also *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810-814.) Wildlands's contention that the settlement left open the need for further negotiations on key terms and conditions undermines the validity of the settlement itself. If anything, Wildlands's argument supports reversal of the July 29, 2011, order as being predicated on an invalid settlement and judgment.[10]

---

[10] The judgment and the April 10, 2010, order are not before us because plaintiffs did not appeal from either one. (See Discussion § F, *post*.) And, they cannot be reviewed pursuant to section 906 because they were appealable. (See § 904.1, subd. (a)(1)-(2).) However, Wildlands's point raises significant questions about the validity of the judgment and the settlement upon which it is based. (See *Weddington*, *supra*, 60 Cal.App.4th at pp. 810-814.) The time for appealing the judgment may have lapsed, but the judgment may nonetheless be subject to a set aside motion. (See *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1286.) If the judgment is indeed void, the trial court's denial of the motion may be appealable. (See *Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691-692.) For now, we are limited to reviewing the only order appealed from: the July 29, 2011, order.

### E. WILDLANDS'S CONTENTION THAT THE JULY 29, 2011, ORDER IS A VALID EXERCISE OF THE TRIAL COURT'S INHERENT POWER TO MODIFY AN INJUNCTION LACKS MERIT

Wildlands also contends that the court had authority to issue the July 29, 2011, as a modification of a permanent injunction.

Wildlands's strained classification of the July 29, 2011, order as an injunction is questionable. Nonetheless, Wildlands has failed to provide any authority for the proposition that a court may add or alter terms of a settlement entered under section 664.6 by deeming the original judgment an injunction. Indeed, such a rule would run counter to *Canaan*, *supra*, 211 Cal.App.4th 1115 and *Hernandez*, *supra*, 126 Cal.App.4th 1161, which disapprove judicial rewriting of settlement agreements.

Wildlands does accurately quote *Barnes v. Chamberlain* (1983) 147 Cal.App.3d 762 (*Barnes*), as stating: "An equity court has inherent power to make its decree effective by additional orders affecting the details of performance, irrespective of reservation of power in the decree. [Citations.]" (*Id.* at p. 767.) But, the *Barnes* court took care to note that the followup orders at issue did not "alter the substantive rights of the parties." (*Id.* at p. 769. Accord, *Hercules Glue Co., Ltd. v. Littooy* (1941) 45 Cal.App.2d 42, 45.) Conversely, the July 29, 2011, order at issue here *did* alter the substantive rights of the parties and was not limited to details of performance.

Requiring Wheeler Ridge Farms to disclaim water rights is not a detail of performance; nor is the subordination of the water delivery obligation to Wildlands's historical water use. [11] Thus, even if the original judgment had been an injunction, the trial court was not empowered to issue its July 29, 2010, order.

---

[11] Moreover, the 5.71 gallons per minute flow rate figure is nowhere to be found in the settlement language.

### F. THE TRIAL COURT'S APRIL 10, 2010, ORDER IS NOT BEFORE US

In their briefing, plaintiffs also seek to vacate a portion of the April 10, 2010, order. They argue the April 10, 2010, order exceeded the trial court's jurisdiction and is void. Therefore, plaintiffs contend, the April 10, 2010, order is subject to either direct or collateral attack without any time limitation.

Even if plaintiffs are correct that they could have appealed the April 10, 2010, order at any time, they have not actually done so.

On appeal, this court may review an order after a judgment made appealable by section 904.1, subdivision (a)(1). (§ 904.1, subd.(a)(2).) We may also review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects" the order appealed from. (§ 906.) We may not, however, review " ' "any decision or order from which an appeal might previously have been taken." ' [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239; see also § 906.) The April 10, 2010, order was a postjudgment order made appealable by section 904. 1, subdivision (a)(2). And because it was appealable, the April 10, 2010, order is not reviewable absent a notice of appeal identifying it.

It may be, as plaintiffs contend, that the April 10, 2010, order is void and may be appealed from at any time. But just because an order may be appealed does not mean it has been appealed. That is, even if the order is void, and even if that fact vitiates any *deadline* for filing a notice of appeal, it does not vitiate the need to file a notice of appeal altogether. Here, no notice of appeal was filed as to the April 10, 2010, order. Plaintiffs' only notice of appeal merely references orders entered on "July 29, 2011 and [a] minute order [dated] Aug. 3, 2011." "It would be beyond liberal construction to view that notice of appeal as relating to a further and different order, rendered a year previously…."

14.

(*Russell v. Foglio* (2008) 160 Cal.App.4th 653, 661.)  The April 10, 2010, order, even if appealable, is not *reviewable* on this appeal.[12]

## DISPOSITION

The trial court's July 29, 2011, order is reversed.[13]

_____
Poochigian, J.

WE CONCUR:

_____
Levy, Acting P.J.

_____
Detjen, J.

_____

[12] For the same reason, we cannot pass upon Wildlands's contention that if the July 29, 2011, is invalid, the April 10, 2010, order is invalid as well.

[13] Plaintiffs also seek an order "which directs the Wildlands to provide three million gallons of water per year, as the water is needed by Wheeler Ridge, and to deliver the water to the red and white tank to create a reservoir to effectuate the delivery of the water as needed.  The water must be of a quality consistent with the water that had been delivered at the time of the judgment, that is, water that is usable by [*sic*] cattle grazing."  We decline to direct the trial court to issue such an order.

Such a disposition would replace one error with another.  We are reversing the July 29, 2011, order because it went beyond the language of the settlement agreement.  We will not, in the next breath, commit that error ourselves.  "Neither *this court* nor the superior court can rewrite the oral settlement agreement or add what was omitted." (*Canaan*, *supra*, 211 Cal.App.4th at p. 1126, italics added.)

We do note that some of the language for the order proposed by plaintiff would not add to the terms of the settlement (e.g., "direct[ing] Wildlands to provide three million gallons of water per year.")  As to those terms, a supplemental order is unnecessary because they are already contained in the judgment.

15.