[No. H037315. Sixth Dist. Dec. 12, 2012.]

CANAAN TAIWANESE CHRISTIAN CHURCH, Plaintiff and Respondent,
v.
ALL WORLD MISSION MINISTRIES, Defendant and Appellant.

1116

1118

## COUNSEL

Richard C. J. Wahng and Christopher R. Thomas for Defendant and Appellant.

SSL Law Firm, Jan A. Gruen and Steven M. Sacks for Plaintiff and Respondent.

## OPINION

ELIA, J.—Respondent Canaan Taiwanese Christian Church (CTCC), a California nonprofit religious corporation, brought an unlawful detainer action against All World Mission Ministries (AWMM), a California nonprofit religious corporation, doing business as World Mission Prayer Center (World Mission). On appeal, AWMM asserts that the court's "Order Granting Plaintiff's Ex Parte Application for Order Compelling Execution of Settlement Agreement" improperly compelled its pastor, who was not a party to the action, to sign the written settlement agreement in his individual capacity.[1] Appellant also maintains that the parties' oral settlement agreement, which was placed on the record before the trial court on May 18, 2011, did not require the pastor to personally waive his claims against respondent CTCC.[2]

■ We now conclude that the parties' oral settlement agreement did not require the pastor to release any personal claims against respondent or sign a written agreement purportedly conforming to the oral settlement in his

---

[1] The appellate record does not show that a judgment has been entered in this case. Thus, the order does not appear to be appealable as an order after an appealable judgment. (See Code Civ. Proc., § 904.1, subd. (a)(2).) AWMM suggests that the order is appealable as an order "enjoining Pastor Lee, in his personal capacity, to release any claims related to litigation in this case." There is a right to appeal "[f]rom an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction." (Code Civ. Proc., § 904.1, subd. (a)(6).) For purposes of this appeal, we find that the court's order was in the nature of a "mandatory injunction" and hence an appealable order since it compels the pastor to sign the proposed written settlement agreement in his individual capacity as well as on behalf of AWMM.

[2] No issue is being raised in this appeal regarding the propriety of an ex parte application to enforce a stipulated settlement entered orally before the court.

individual capacity. In addition, we find that the superior court lacked personal jurisdiction over the pastor. Accordingly, we reverse the challenged order.

I

*Procedural History*

Respondent CTCC's complaint for unlawful detainer alleged the following facts. On or about January 1, 2009, respondent CTCC, as lessor, and World Mission, as lessee, entered into a written lease of three separate properties in Mountain View: 1904 Silverwood Avenue, 184 Farley Avenue, and 196 Farley Avenue. One property was leased "for the operation of a church and any ancillary activities related thereto" and two properties were leased "for residential purposes only." The lease agreement, dated January 1, 2009, but apparently executed February 27, 2009, reflects that both Tai Koan Lee, pastor, and John C. Yu, elder, executed it on behalf of World Mission. The lease referred to an option agreement, dated February 27, 2009, between the same parties giving World Mission an option to purchase the same properties.

The complaint further alleged that on or about September 9, 2010, respondent CTCC served World Mission with written three-day notices to quit. According to the complaint, "World Mission failed to cure the breach and the written Lease was effectively terminated as of September 12, 2010." "Notwithstanding the termination of the Lease," respondent CTCC and World Mission entered into three separate agreements for respondent CTCC to sell the properties to World Mission. Respondent CTCC permitted World Mission and its employees and agents to remain on the property and the sale agreements provided that rent was to be applied to the sales price. The complaint averred that World Mission breached the terms of the sale agreements and they were terminated by notice as of March 10, 2011; respondent CTCC served written three-day notices to pay or quit the premises as to each property.

On May 18, 2011, the date set for trial, the parties agreed to settlement talks with the trial judge. The parties were represented by counsel. Respondent's CEO David Weng was present on behalf of respondent CTCC and Pastor Lee was present on behalf of appellant AWMM. After discussions off the record, respondent CTCC's counsel recited the parties' settlement agreement on the record before the court.

The agreement required, among other things, the surrender of the two residential properties, one immediately and the other within three weeks of the hearing. It provided that, "upon surrender of the residential properties [appellant AWMM], including Pastor Tai Koan Lee, shall not return to the

premises in the absence of written notice in advance delivered to David Weng providing 24-hours notice." With respect to these residential properties, "any personal items or property left behind upon the date of surrender shall be disposed of at [appellant AWMM's] expense without notice and without any requirement or obligation of the Plaintiff to maintain said items."

The parties' agreement provided that the third property would be the principal place of business for AWMM and the parties would enter into a new, four-month lease that provided for prepaid, nonrefundable rent. Upon expiration of this lease, appellant would be required to vacate the premises. With respect to this property, "any personal property or items left behind upon the date of surrender shall be disposed of at [appellant]'s expense without notice and without any requirement or obligation of [respondent] to maintain said items."

The agreement provided an exclusive opportunity for appellant AWMM to purchase the church property on specified terms by a certain date. It also provided for the disposition of sums presently held in escrow or in respondent CTCC's possession.

The oral settlement agreement provided: "Pursuant to Civil Code Section 1542, [appellant AWMM] and Pastor Tai Koan Lee hereby release any and all claims to ownership, legal or equitable, or damages of any kind relating to the properties at issue herein, any of [respondent CTCC's] employees, agents or representatives, or any agreement, including but not limited to prior purchase and sale agreements, the lease of January 1st, 2009, and the option agreement."

It also stated: "The new lease and the contemplated commercial purchase and sale agreement regarding the property shall supersede all prior agreements between [respondent] and [appellant]. Pastor Tai Koan Lee as president and CEO of All World Ministries hereby authorizes Eugene Chen to enter into this settlement, the new lease and the separate contemplated commercial purchase and sale agreement, as the authorized agents and representative of [appellant]. [¶] Pastor Lee and John Yu shall co-sign all such agreements acknowledging their approval of same."

The parties' settlement provided that CTCC was entitled to a stipulated judgment of possession and issuance of an immediate writ of possession without notice if appellant AWMM failed to timely surrender any of the properties. It provided for the unlawful detainer action to "be stayed for a period of six months" and for respondent to "dismiss the action with prejudice provided [appellant] fully complies with the terms of this agreement." Under the settlement, the court retained jurisdiction under Code of

Civil Procedure section 664.6 to enforce the agreement and the prevailing party was entitled to recover attorneys' fees in any such proceedings.

The trial court separately asked respondent's CEO, David Weng, whether he understood the agreement that had been stated for the record and whether he committed to the agreement on behalf of respondent CTCC. Weng answered, "Yes," to both questions. The court asked Pastor Lee whether he heard and understood the terms of the agreement and whether he was authorizing Chen to bind appellant AWMM to the agreement. Lee answered, "Yes." Both Pastor Lee and Chen answered "Yes" when the court then asked whether they had "heard and understood the terms of the agreement" and "agree[d] on behalf of [appellant AWMM], that [appellant AWMM] is bound to those terms."

At the end of the hearing, an attorney for respondent CTCC informed the court that respondent's counsel would prepare a written settlement agreement reflecting the oral agreement and a stipulated judgment and requested that opposing counsel review, sign, and return the documents to respondent's counsel within 10 days. Counsel for appellant indicated they would do so.

Respondent CTCC subsequently filed an ex parte application for a court order to compel execution of the proposed written settlement agreement. One of respondent's claims was that Pastor Lee was refusing to sign the formal written settlement agreement in his individual capacity. The supporting declaration of respondent's attorney did not provide any additional evidence with regard to the meaning of the terms of the oral settlement before the court.

Appellant AWMM filed opposition. It argued among other things that the release term of the settlement agreement should not "be construed as requiring Pastor Lee to sign a release in his *personal* capacity." Appellant asserted that "[t]his term was not discussed or agreed upon by the parties . . ." and "Pastor Lee is not a party in this case." It further contended: "[Appellant] would suffer no harm if Pastor Lee did not sign this agreement in his personal capacity. Pastor Lee has already relinquished the residential property that he inhabited back to Plaintiff. The only unresolved issues in the settlement agreement pertain to the Church property, which is occupied by [AWMM] and not by Pastor Lee. Pursuant to the terms of the written agreement, [AWMM] would be releasing its claims on behalf of itself and on behalf of all heirs, assigns, employees, agents and representatives, which would include Pastor Lee." It claims that "the only reason for [respondent CTCC] to request Pastor Lee's signature is to embarrass and harass Pastor Lee." The supporting declaration of appellant's counsel did not provide any additional evidence regarding the meaning of the terms of the oral settlement before the court.

By order filed August 10, 2011, the superior court ordered appellant and Pastor Lee to sign the proposed written settlement agreement, which was attached to the order.[3] The proposed agreement, whose terms went beyond the agreement presented orally before the court, contained a provision providing that the parties and Pastor Lee waive their rights under Civil Code section 1542[4] and the parties and Pastor Lee, *individually,* "expressly acknowledge" that the release is intended to include "all claims known or unknown, anticipated or unanticipated, suspected or unsuspected . . . ." The agreement provided for Pastor Lee's signature in his individual capacity as well as on behalf of appellant as its president, CEO, and pastor.

AWMM filed a notice of appeal.

## II

### *Discussion*

#### A.  *Standing*

Respondent first argues that appellant lacks standing to appeal the order against Pastor Lee.

█ Code of Civil Procedure section 902[5] states: "Any party aggrieved may appeal in the cases prescribed in this title." "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.]" (*In re K.C.* (2011) 52 Cal.4th 231, 236 [128 Cal.Rptr.3d 276, 255 P.3d 953].) "Not every party has standing to

---

[3] "Often, in cases where an oral settlement is placed on the record in the trial court, a written agreement will follow. If difficulties or unresolvable conflicts arise in drafting the written agreement, the oral settlement remains binding and enforceable under [Code of Civil Procedure] section 664.6. Having orally agreed to settlement terms before the court, parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms." (*Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1431 [129 Cal.Rptr.2d 41].)

[4] Civil Code section 1542 states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

[5] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.]" (*Ibid.*)

In *Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1964) 231 Cal.App.2d 80 [41 Cal.Rptr. 597] (*Teitelbaum Furs*), the trial court entered a judgment awarding both costs of suit and costs on appeal against plaintiff corporations and against Albert Teitelbaum, individually. (*Id.* at p. 81.) Teitelbaum was not a party to the action and he did not appeal. (*Id.* at pp. 80–81.) The plaintiff corporations appealed, challenging the judgment insofar as it granted relief against Teitelbaum as an individual. (*Id.* at p. 81.) The appellate court concluded that the plaintiff corporations were "not aggrieved by that portion of the judgment" and dismissed the appeal. (*Id.* at p. 82.)

■  While this case may appear similar to *Teitelbaum Furs* at first glance because AWMM is challenging the portion of the order compelling Pastor Lee to sign the written agreement in his individual capacity, it is distinguishable. As a party to the litigation, appellant AWMM has a valid interest in the accurate enforcement of the settlement agreement it reached with respondent CTCC. The settlement of a lawsuit "implicates a substantial right of the litigants themselves." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 584 [41 Cal.Rptr.2d 878, 896 P.2d 171].) Appellant is in essence arguing that the court is not correctly enforcing that settlement agreement. We resolve any doubts regarding standing in favor of AWMM and conclude that AWMM is legally "aggrieved" for purposes of this appeal.

## B.  *Construction of the Settlement Agreement*

Appellant AWMM maintains that Pastor Lee did not agree to sign a written settlement agreement in his personal capacity and, since Pastor Lee was not a party to the lawsuit or to the underlying agreements that gave rise to this action, the oral settlement agreement must be reasonably understood as including Pastor Lee's release of respondent CTCC in only his representative capacity, that is on behalf of AWMM.

■  "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. (See, e.g., *Gorman* v. *Holte* (1985) 164 Cal.App.3d 984, 988 [211 Cal.Rptr. 34] . . . ['Compromise settlements are governed by the legal principles applicable to contracts generally'].)" (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810–811 [71 Cal.Rptr.2d 265].) Our review of the trial court's interpretation of the oral settlement agreement is therefore governed by the settled rule that an appellate court is not bound by a construction of a contract based solely upon its terms without the aid of any extrinsic evidence.

(See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) "Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825].)

██ "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)' [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) "The factual context in which an agreement was reached is also relevant to establish its meaning unless the words themselves are susceptible to only one interpretation. [Citations.]" (*Nish Noroian Farms v. Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 735 [201 Cal.Rptr. 1, 677 P.2d 1170]; see Civ. Code, § 1647 ["A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."]; see also Code Civ. Proc. § 1860.)

Here, Pastor Lee was not a party to the unlawful detainer action. The parties' settlement agreement was orally presented by respondent's counsel. Pastor Lee was present in the courtroom in his capacity as CEO and president of appellant. At the end of the hearing, the pastor acknowledged, upon inquiry by the court, that he heard and understood the terms of the agreement, the pastor confirmed that he (implicitly as appellant's representative) was authorizing Chen to execute the new agreements on behalf of appellant AWMM, and the pastor agreed, on behalf of appellant AWMM, that appellant AWMM was bound to its terms.

Even though Pastor Lee had apparently occupied one of the residential properties as appellant's pastor,[6] the record does not disclose that the pastor had any potential personal claims against CTCC with respect to the properties,

---

[6] Appellant acknowledges on appeal that "Pastor Lee inhabited one of the residential properties at issue in the case . . . ."

respondent's employees, agents or representatives, or the underlying agreements at issue. The mere recitation of the settlement agreement by respondent's counsel, who certainly did not represent Pastor Lee, did not bind Pastor Lee. Pastor Lee never affirmatively released any personal claim against respondent CTCC on the record. Pastor Lee never made any representations affirmatively indicating that was agreeing to the settlement agreement in other than his representative capacity on behalf of appellant.

Nevertheless, respondent argues that the oral settlement's release term "has two subjects—Defendant and Lee" ("[d]efendant [AWMM] and Pastor Tai Koan Lee hereby release any and all claims") and the inclusion of Pastor Lee served "no purpose" unless it meant that the pastor released such claims in his personal capacity. We are not persuaded.

■ The record reflects that the oral settlement agreement authorized the trial court to retain jurisdiction under section 664.6 to enforce the agreement. Section 664.6 provides: "If *parties* to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the *parties*, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (Italics added.) "[T]he term 'parties' as used in section 664.6 ('If parties to pending litigation stipulate . . . for settlement of the case . . .') means the litigants themselves, and does not include their attorneys of record." (*Levy v. Superior Court, supra*, 10 Cal.4th at p. 586, fn. omitted.) Thus, to be enforceable under section 664.6, AWMM itself had to stipulate to settlement of the case.

■ A nonprofit religious corporation, like other corporations, has the power to assume obligations and enter into contracts. (Corp. Code, § 9140, subd. (i); cf. Corp. Code, § 207, subd. (g).) But corporations necessarily act through agents.[7] (See *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 782 [98 Cal.Rptr.2d 1, 3 P.3d 286].) For a written settlement agreement on behalf of a corporation to be enforceable pursuant to section 664.6, it must be executed by an authorized corporate representative. (See

---

[7] "Any contract . . . made in the name of a [nonprofit religious] corporation which is authorized or ratified by the board or is done within the scope of authority, actual or apparent, conferred by the board or within the agency power of the officer executing it, except as the board's authority is limited by law other than this part, binds the corporation, and the corporation acquires rights thereunder whether the contract is executed or wholly or in part executory." (Corp. Code, § 9141, subd. (b); cf. Corp. Code, § 208, subd. (b).)

*Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1116–1120 [127 Cal.Rptr.2d 370].) The same must be true for a settlement agreement orally presented to the court. It is clear from the record that AWMM was seeking to act through Pastor Lee, who was identified as its CEO and president. The most reasonable interpretation is that the settlement agreement orally recited on the record contemplated that Pastor Lee, in only his representative capacity and not in his individual capacity, released the specified claims against CTCC and would cosign the new agreements, including the formal written settlement agreement that presumably would conform to the oral version.

Neither this court nor the superior court can rewrite the oral settlement agreement or add what was omitted. (See § 1858 ["In the construction of a[n] . . . instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . ."]; *Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th at p. 810 ["nothing in section 664.6 authorizes a judge to create the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon"]; cf. *Reed v. Murphy* (1925) 196 Cal. 395, 399 [238 P. 78] ["if a consent judgment or decree is different from or goes beyond the terms of the stipulation which forms its basis it may be set aside upon appeal or by other appropriate procedure, as it would not be in reality a consent judgment"].) The court below could not properly compel Pastor Lee, in his individual capacity, to release claims against respondent CTCC or sign the proposed written agreement.[8]

## C. *Lack of Personal Jurisdiction*

We questioned whether the superior court had personal jurisdiction over Pastor Lee and asked the parties for supplemental briefing addressing the issue.

Pastor Lee was not named as a party and appeared in the proceedings below only as appellant AWMM's representative. A nonparty that is not named in the pleadings makes a general appearance and submits to the court's personal jurisdiction by seeking affirmative relief or opposing a motion on the merits. (*Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1029 [76 Cal.Rptr.3d 559]; see § 410.50, subd. (a) ["A general appearance by a party is equivalent to personal service of summons on such party"].) "A party whose participation in an action is limited to challenging the court's personal jurisdiction does not make a general appearance." (*Serrano v. Stefan Merli Plastering Co., Inc., supra,* 162 Cal.App.4th at

---

[8] Our conclusion makes it unnecessary to reach appellant's argument that Pastor Lee could not release respondent from liability due to a lack of new consideration.

p. 1029.) In addition, "[a]n appearance at a hearing at which ex parte relief is sought, or an appearance at a hearing for which an ex parte application for a provisional remedy is made, is not a general appearance . . . ." (§ 418.11.)

The appellate record does not disclose that Pastor Lee made a general appearance in his individual capacity in the unlawful detainer action. The mere fact that the pastor was present in the courtroom as appellant's representative when the parties' oral settlement agreement was placed on the record, or affirmed that he understood the settlement agreement's terms, or agreed on appellant AWMM's behalf that appellant AWMM was bound to its terms did not give the superior court personal jurisdiction over him as an individual.

■ We reject respondent's assertion that the court's inherent authority to control proceedings and persons permitted the court to force Pastor Lee to sign the proposed written settlement agreement, which included a comprehensive release of claims, in his individual capacity. Neither case cited by respondent stands for that proposition. Rather, both involve standing to appeal. (See *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295–297 [50 Cal.Rptr.2d 493] [plaintiff's expert was an aggrieved party and had standing to appeal court's order setting his hourly deposition fee payable by defendants]; *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1223–1224 [87 Cal.Rptr.2d 339] [attorney successfully appealing sanctions award against him had no standing to raise separate contention that court erred in denying his client's motion for sanctions].) While courts are empowered to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto" (§ 128, subd. (a)(5)), we have found no authority to suggest that this power may be exercised to compel a nonparty, who was present in court only as a representative of a corporate litigant, to sign the parties' proposed written settlement agreement in his individual capacity.

Moreover, even if the pastor had agreed outside of court to release personal claims against CTCC or to be personally governed by the parties' settlement of the pending action, the parties' agreement to settle set forth orally before the court did not confer personal jurisdiction over him and make him subject to an enforcement order in this action. (Cf *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 119–124 [89 Cal.Rptr.2d 1] [nonparty insurer's agreement to be bound by the result of litigation between the insured and other parties did not confer personal jurisdiction over insurer and court could not add the insurer to judgment as a judgment debtor pursuant to § 664.6].)

## DISPOSITION

The superior court's Order Granting Plaintiff's Ex Parte Application for Order Compelling Execution of Settlement Agreement is reversed. Appellant is entitled to costs on appeal.

Rushing, P. J., and Premo, J., concurred.