Filed 5/16/14  Villmer v. Silver Oak Real Estate CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAULA C. VILLMER, | |
| Plaintiff and Respondent, | G048199 |
| v. | (Super. Ct. No. 30-2011-00450304) |
| SILVER OAK REAL ESTATE OF ORANGE COUNTY et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Reversed and remanded.

Law Office of Paul S. Sienski and Paul S. Sienski for Defendants and Appellants.

Law Office of Robert A. Von Esch IV and Robert A. Von Esch IV, for Plaintiff and Respondent.

Paula C. Villmer (Villmer) purchased a home (the Property) in Anaheim, California. She sued the seller's real estate agent, Karyn Schonherz, and broker, Silver Oak Realty of Orange County dba Prudential California Real Estate (collective referred to in the singular as Silver Oak unless the context requires otherwise), for failing to disclose government plans to build a street on the unimproved public easement located behind the Property. Silver Oak filed a cross-complaint against Villmer's real estate agent and broker and obtained a default.

Before trial, the parties agreed Villmer would dismiss the lawsuit if Silver Oak paid $24,815 and assigned its rights to the default judgment that would soon be entered on the cross-complaint. Silver Oak paid the money owed, but the assignment did not proceed as planned. Villmer moved to enforce the settlement under Code of Civil Procedure section 664.6.[1] The court granted the motion, awarding Villmer an additional $24,815, plus the attorney fees and costs incurred to enforce the settlement. We reverse the judgment. The parties did not agree to a monetary judgment as an alternative to the assignment. Moreover, the terms of the assignment were too uncertain and unenforceable.

I

In 2011, Villmer filed a complaint against Silver Oak for failing to disclose the government's plans to build a road that would substantially reduced the value of the Property. Silver Oak filed a cross-complaint against Villmer's agent, Joseph Ginel, and real estate broker, Dove Capital Corporation (collectively referred to in the singular as Ginel), for comparative indemnity, contribution, and declaratory relief. After Ginel failed to file an answer to the cross-complaint, a default was entered against him.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

On July 9, 2012, Villmer and Silver Oak informed the trial court the case was "essentially" settled. Silver Oak's counsel explained the settlement included the assignment of the default taken with respect to Ginel and "that requires not only an assignment by [Silver Oak], but also by the insurance company [Great American E&S Insurance Company (Great American)]." Counsel requested a short continuance, explaining Great American's coverage counsel was busy and it would take several weeks. Villmer agreed to a continuance of the trial date, acknowledging the settlement was "cash plus the assignment of the default judgment." The court continued the matter to August 6.

On August 5, 2012, Villmer and Silver Oak executed a written settlement agreement (hereafter Settlement Agreement). The following day, August 6, Villmer filed a notice of settlement of the entire case. The notice stated the Settlement Agreement conditioned dismissal on the satisfactory completion of certain terms, and a dismissal would be filed "no later than" November 1, 2012. The court set an order to show cause (OSC) regarding dismissal for December 3, 2012.

In the Settlement Agreement, Silver Oak agreed to the following terms: (1) pay Villmer $24,815 on or before August 16, 2012; and (2) assign to Villmer all its rights and interest in the default judgment against Ginel. The Settlement Agreement stated the terms of the assignment were contained in the parties' separate "Assignment of Claim and Judgment" (hereafter Assignment Agreement), attached as exhibit 1.

The Settlement Agreement expressly stated the court would retain jurisdiction to enforce the agreement under section 664.6. Paragraph 15 stated the Settlement Agreement was enforceable under section 664.6 because, "Notwithstanding the dismissal of the [c]omplaint if any [party] fails to perform its obligations under this Agreement, the [c]ourt shall retain jurisdiction to enforce the terms and conditions and rights and obligations of the [c]ontracting [p]arties and their insurance carriers, if

3

applicable, under this [s]tipulation in accordance with . . . section 664.6 and all other applicable code sections and precedent and will do so on ex parte application."

Paragraph 15.1 clarified the parties agreed that for the court to retain jurisdiction under section 664.6 following dismissal of the lawsuit, they were required to enter into a separate written stipulation executed by the parties (not their counsel or agents) requesting retention of jurisdiction. The Settlement Agreement stated the separately executed stipulation and subsequent court order would be attached as exhibit 2 to the agreement. Villmer agreed to dismiss the case after she received those documents. Villmer, Schonherz, and Brad Pearson (Silver Oak's vice president) all signed the Settlement Agreement.

Silver Oak's insurer, Great American, was not a party to the Settlement Agreement and did not sign it. However, Great American was included in the first draft of the Assignment Agreement that specified it was one of the assignors. The Assignment Agreement stated it was made between Villmer "on one part[,]" Great American "on the second part[,]" and Silver Oak "on the third part." The Assignment Agreement explained, "Villmer settled her claim against Silver Oak . . . for $24,815[] with Silver Oak paying $15,000[] and Great American $9,815[]. The $24,815[] settlement and Silver Oak's . . . costs in defending the [c]omplaint and the [c]ross-[c]omplaint are recoverable against . . . Ginel in a default judgment. Silver Oak will be filing the necessary documents with the court to enter judgment on the default against . . . Ginel ['Judgment']. [¶] . . . Great American [and] Silver Oak . . . desire to assign their rights to collect the Judgment to Villmer."

The Assignment Agreement added, "In consideration for the release and dismissal as set forth in the Settlement Agreement . . . Silver Oak . . . and Great American sell, transfer, and assign all of their rights, title and interest in the [c]ross-[c]omplaint to Villmer. Silver Oak . . . will file the necessary pleadings for a default judgment in the

4

amount of settlement money paid by Silver Oak . . . and/or its insurance company, Great American E&S Insurance Company--$24,815.00--and costs."

The Assignment Agreement acknowledged Silver Oak would file default judgment papers within 14 days, and promised that within 60 days of the court entering a default judgment it would file and serve an "acknowledgement of assignment of judgment, per . . . section 673 . . . ." The Assignment Agreement provided Villmer was solely responsible to pay any attorney fees and costs incurred to recover the money due under the default judgment, and clarified Silver Oak and Great American would have no control over Villmer's collection efforts. The assignment was "intended to convey" all Silver Oak's and Great American's interests in the cross-complaint.

All did not proceed as planned. Less than two weeks after the Settlement Agreement was signed, Silver Oak's counsel wrote an e-mail (on August 16, 2012), to Villmer's counsel explaining Great American did not want to sign the Assignment Agreement but would assign its rights to Silver Oak, which could then assign all rights to Villmer. Counsel added it was sending Silver Oak's portion of the settlement ($15,000) and Great American's coverage attorney had a check for the balance on its way. The following day, on August 17, 2012, Villmer's counsel wrote an e-mail to Silver Oak stating Villmer had received $15,000, which was not the agreed upon amount. In addition, Villmer noted Silver Oak had not yet signed the 664.6 stipulation (discussed in paragraph 15.1 of the Settlement Agreement) and Great American had not signed the Assignment Agreement.

On August 20, 2012, Silver Oak's counsel sent Villmer a letter urging her to sign the revised Assignment Agreement. Counsel stated, "I have no control over [the] insurer. It refuses to sign an agreement with [Villmer] because it does not want to create a contractual relationship with her. As such, the terms of the assignment . . . need to be revised." Silver Oak stated the revised Assignment Agreement contained all the points

5

negotiated on August 5, and the only revision is deletion of the references to Great American.

On October 21, 2012, Villmer's counsel wrote Silver Oak an e-mail asking why the default judgment paperwork had not yet been filed and why it had not signed the section 664.6 stipulation. Silver Oak's counsel replied he thought they had 60 days, not 14 days, to obtain the default judgment.

The following month, on November 13, 2012, Villmer filed an ex parte application to enforce the terms of the Settlement Agreement and for entry of judgment under the terms of the Settlement Agreement, pursuant to section 664.6. She requested the payment of $24,815, plus attorney fees incurred to enforce the Settlement Agreement ($2,425 and $69.95 costs).

Silver Oak opposed the motion. It argued the portion of the Settlement Agreement concerning the assignment was not enforceable because one of the assignors, Great American had not executed the Assignment Agreement. Silver Oak's counsel declared he advised Villmer's counsel of this problem and drafted a revised agreement but Villmer would not sign the revised agreement. Silver Oak stated that if the agreement was enforceable, the issue was moot because it served the default judgment packet on November 9, 2012, and filed it on November 13, 2012. It added, the court had authority to enforce the settlement but could not award monetary damages for the failure to comply with the agreement. Silver Oak's counsel declared Villmer was paid $24,815 in August 2012.

Silver Oak attached a copy of the filed default judgment packet. The packet requested a default judgment in the amount of $24,975.39 ($24,815 "paid in settlement" plus $160.39 charged by the process server). The packet included a copy of the complaint, cross-complaint, and related proofs of service. The court denied without prejudice the ex parte application to enforce the Settlement Agreement.

6

On November 20, 2012, Villmer filed a motion seeking enforcement of the Settlement Agreement and to have judgment entered in her favor in the sum of $29,254.90. She argued the Settlement Agreement was enforceable against Silver Oak, and the fact Great American failed "to cooperate is of no importance" to her or her rights under the settlement. She added the default package submitted was substantially lacking and would likely be denied by the court. Villmer concluded, "Since it is clear [Silver Oak has] no intention of rendering full performance under the terms of the Settlement Agreement, [she] requests that [the court] enter judgment in her favor . . . in the sum of $24,815, plus attorney fees incurred to enforce the Settlement Agreement the sum of $2,425[] and costs in the sum of $69.95 . . . ."

Villmer argued Silver Oak breached the Settlement Agreement by failing to obtain an assignment from the insurance company. She also argued the Settlement Agreement was enforceable despite the fact Great American did not sign the Assignment Agreement. Finally, she argued the Settlement Agreement provided for attorney fees incurred to enforce its terms.

Silver Oak opposed the motion on the grounds it was unfounded and moot because it had "performed all tasks that can be performed at this time under the [S]ettlement [A]greement." It stated the only task remaining was to revise the Assignment Agreement. Silver Oak explained Great American refused to assign its rights directly to Villmer, but agreed to assign it rights to Silver Oak, who could then assign all rights to the default judgment to Villmer. Silver Oak stated it sent a revised Assignment Agreement to Villmer on August 16, 2012, but she refused to sign it and instead filed an improper ex parte application to collect monetary damages.

Silver Oak provided the trial court with some background facts leading up to the August 2012 Settlement Agreement. Silver Oak recalled the lawsuit settled in June 2012, but due to delays caused by Great American, an agreement was not immediately prepared. Silver Oak remembered that in July 2012, Villmer asserted there was no

7

settlement and demanded an additional $4,815. Negotiations regarding this additional demand for money further delayed matters. Great American eventually agreed to pay the extra amount and Silver Oak's counsel prepared the Settlement Agreement on August 5, 2012, the day before trial. Due to the late date, Silver Oak's counsel stated he did not have time consult with, or obtain approval of, Great American. Counsel later discovered Great American would not sign the Assignment Agreement as written.

Silver Oak asserted the timeline for filing the default packet and acknowledgement of the assignment did not start until the Assignment Agreement was fully executed. Therefore, the default packet was not untimely filed. Silver Oak noted that as part of the assignment Villmer accepted all risk of collecting on the default judgment, including a possible claim for malicious prosecution or costs associated with litigating a possible section 473 motion. Villmer agreed to be "solely responsible" for all actions by the defaulted cross-defendants once the default judgment was entered and assigned to her.

Silver Oak represented that on August 16, 2012, it explained Great American was refusing to sign the Assignment Agreement, and it provided a revised copy deleting references to the insurer and added a warranty of assignment clause. Silver Oak concluded it had performed all the terms required under the Settlement Agreement. It paid the required $24,815 in two installments. It paid $15,000 on August 16, and an additional $15 on August 20, after Great American paid $9,800 (and refused to pay the additional $15). In addition, Silver Oak signed a writing on August 5, 2012, agreeing the court would retain jurisdiction under 664.6 and no other stipulation was required. It also served and filed a default packet on the cross-complaint on November 13, 2012, even though there was not yet a valid assignment transferring the risks to Villmer. Silver Oak stated it would provide a notice of assignment after Villmer signed the revised Assignment Agreement.

In addition, Silver Oak argued the Assignment Agreement could not be enforced because it was not signed by Great American. It argued Great American was a necessary party to the assignment because it paid $9,800 of the settlement. Silver Oak maintained that if the court determined the Settlement and Assignment Agreements were enforceable, Silver Oak fully performed and it cannot be compelled to pay damages. It had paid $24,815 and filed the default judgment packet. Silver Oak noted it had promised only to assign its rights to the default judgment and never agreed to guarantee Villmer would recover on the judgment. Silver Oak asserted the evidence showed it reasonably requested Villmer execute a revised Assignment Agreement, obviously needed to give Villmer the right to fully pursue the default judgment.

In her reply brief, Villmer accused Silver Oak and its counsel of making a material misrepresentation to her when they agreed to assign all rights to the default judgment as part of their settlement. She asked the trial court not "to countenance their behavior and [not] allow them to take advantage of their obvious acts of fraud." Villmer noted Silver Oak had not obtained an assignment from Great American and failed to provide proof Great American would not cooperate. She requested the court enter judgment in her favor for $24,815 plus attorney fees and costs ($30,329.90).

At the hearing, the court heard oral argument and took the matter under submission. On December 17, 2012, the trial court issued a minute order granting the motion. It did not provide any reasons. It entered judgment in favor of Villmer and against Silver Oak in the amount requested ($27,309.95), which included $24,815 in principal, $69.95 in costs, and $2,425 in attorney fees.

Silver Oak moved for a new trial on the grounds the trial court did not enforce the Settlement Agreement but rather rewrote the terms to give Villmer a double recovery. Silver Oak also filed an ex parte application to stay enforcement of the judgment.

The court stayed execution of the judgment but denied the motion for new trial. It explained, "Pursuant to [section] 664.6, all parties signed the [S]ettlement [A]greement. The court had authority to enforce the agreement, because the parties entered into a valid and binding settlement. (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182.) Great American was not a party to the [S]ettlement [A]greement."

II

On appeal Silver Oak argues the settlement was not enforceable because Great American was not a party to the lawsuit and Great American did not sign the Assignment Agreement. In addition, Silver Oak asserts it fully performed its duties under the Settlement Agreement and the court improperly rewrote the agreement by awarding money damages. All of these points have merit.

*A. Controlling Legal Principles Regarding Section 664.6*

"Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).) "Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon. (*Id.* at p. 810.)

As with any contract, the Settlement Agreement requires mutual consent and definite terms. "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. [Citation.]" (*Weddington, supra,* 60 Cal.App.4th at p. 811.) "Moreover, to be binding, the agreement must be *sufficiently definite* to enable courts to give it an exact meaning. If an essential element is reserved for future agreement, it is not definite enough." (Weil & Brown, Cal. Practice Guide: Civil

10

Procedure Before Trial (The Rutter Group 2013) ¶ 12:955.5, p. 12(ll)-122.)  In other words, """"The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.""" [Citations.]"  (*Weddington, supra,* 60 Cal.App.4th at p. 811.)  And when the parties reserve a material term for future agreement, """either party in such a case may, by the very terms of the promise, refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.""  (*Id.* at p. 812.)

In ruling on a motion to enter judgment on a Settlement Agreement, the trial court must resolve disputed issues relating to the binding nature or terms of the settlement "and ultimately determine whether the parties reached a binding mutual accord as to the material terms."  (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905.)  On appeal, we review de novo issues of contract law but inquire only whether the trial court's rulings on factual issues are supported by substantial evidence.  (*Kohn v. Jaymar–Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.)

*B.  Analysis*

In this case, the Settlement Agreement between Silver Oak and Villmer contemplated three material terms.  First, Silver Oak agreed to pay Villmer $24,815 before August 16, 2012, and it is undisputed this term was enforceable and was satisfied.  Second, Villmer agreed to dismiss the action following an assignment of the default judgment.  This did not occur, but the parties agree this condition precedent provision was enforceable.

This appeal concerns the enforceability of the third material term.  The Settlement Agreement provided:  "In consideration for the release and dismissal, Silver Oak and Schonherz sell, transfer[,] and assign all of their rights, title[,] and interest in the [c]ross-[c]omplaint and or [d]efault [j]udgmet to Villmer.  The terms of the assignment are fully stated in the accompanying [Assignment Agreement] attached as Exhibit '1.'"

11

The above two sentences are the only reference to Silver Oak's assignment obligation in the Settlement Agreement. The first sentence clearly contemplates a full assignment to Villmer. However, it plainly refers to only some of the parties having a right and interest in the default judgment. It does not mention Great American's approximate 1/3 interest in the judgment. Moreover, no material terms of the assignment are discussed. The second sentence explains and plainly acknowledges formation of a separate Assignment Agreement is a condition precedent to enforcement of the assignment obligation. This provision was necessary because the parties understood a full assignment could not occur until a nonparty, Great American, separately assigned its rights to the judgment.

Villmer argues the two sentence assignment provision of the Settlement Agreement was properly enforced against Silver Oak. Villmer maintains she and Silver Oak agreed to the material terms of the assignment, and she sought enforcement only against Silver Oak, not Great American. She asserts only Silver Oak was a party to the lawsuit and "Great American [was] neither the subject nor the subject matter of the [t]rial [c]ourt's decision." This overly simplistic argument fails for the following reasons.

First, although Villmer did not seek to enforce the agreement against a nonparty, Great American, she did seek enforcement of a promise for a *full* assignment of a judgment that required the nonparty's cooperation. We question whether Villmer could seek enforcement of an agreement that both parties understood would require a future promise made by a nonparty to the settlement. We found no similar cases regarding this issue, and the parties cite to none.

We find instructive case authority holding a trial court only has authority to enforce a settlement agreement made between the parties to the lawsuit. It has no power to enter a judgment compelling a nonparty, such as Great American, to assign its interest in the judgment to Villmer. (*Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1126 (*Canaan*) [court could not compel

12

nonparty to litigation to release claims against respondent or sign proposed written settlement agreement].)

Also instructive is the body of case authority holding a trial court may not change or rewrite the terms of the parties' settlement agreement. "Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington, supra,* 60 Cal.App.4th at p. 810, cf. *Reed v. Murphy* (1925) 196 Cal. 395, 399 ["if a consent judgment or decree is different from or goes beyond the terms of the stipulation which forms its basis, it may be set aside upon appeal or by other appropriate procedure, as it would not be in reality a consent judgment"].)

In this case, the trial court properly recognized the case authority limiting its power to compel a nonparty to comply with the terms of the parties' settlement agreement. It correctly did not order Great American to sign the Assignment Agreement or otherwise assign its rights to the default judgment to Silver Oak or Villmer.

Although the parties do not discuss it, we also conclude the trial court properly recognized it could not order Silver Oak to assign its partial rights to the default judgment to Villmer. In short, the Settlement Agreement contains none of the provisions or details regarding the assignment, but left those material terms for a future agreement. The one sentence devoted to the assignment obligation was insufficiently definite and uncertain for the court to give it meaning. (See *Weddington, supra*, 60 Cal.App.4th at p. 811 ["'Consent is not mutual, unless the parties all agree upon the same thing in the same sense'"]; Civ. Code, § 3390, subd. 5 [contract not specifically enforceable where terms are "not sufficiently certain" to make act to be done "clearly ascertainable"].)

13

Villmer's briefs incorrectly refer to provisions of the Assignment Agreement as proof the parties in fact agreed to the material terms. "A settlement agreement which incorporates other documents can be enforced pursuant to section 664.6, but only if there was a meeting of the minds regarding the terms of the incorporated documents." (*Weddington, supra,* 60 Cal.App.4th at p. 814.) Such was not the case here. We cannot rewrite the Assignment Agreement to eliminate any reference to Great American, and then compel Silver Oak to assign its portion of the judgment to Villmer under the remaining material terms. This is not what the parties originally bargained for.

For the terms of the Assignment Agreement to be enforceable, it required a "meeting of the minds" between the three named parties involved in the anticipated future assignment. And because the Settlement Agreement contained no material terms or details regarding how even a partial assignment of the default could be achieved, the trial court properly concluded enforcement was not possible because this term of the Settlement Agreement was too uncertain and indefinite as a matter of law.

Although the trial court was right on the above two points, we found no factual or legal basis to support its decision to enforce Silver Oak's promise of assignment by imposing a monetary judgment. We can infer from the court's ruling that it determined Villmer should have the financial benefit of the unfulfilled promise. But we have carefully reviewed the terms of the Settlement Agreement and found nothing suggesting Silver Oak agreed to assign its partial interest, or alternatively, pay the full value of the assignment. Nor did it agree to pay a penalty if the full assignment did not occur.

To the contrary, the Settlement Agreement contains no information about the anticipated value of the default judgment. The drafted Assignment Agreement, which was never formed, also did not designate a specific sum payable in the event the parties

14

failed to assign their rights to Villmer. Missing from the Assignment Agreement is a penalty or any monetary alternative to the assignment obligation.

We can infer the court arrived at the sum of $24,815 based on a provision of the unenforceable Assignment Agreement discussing Silver Oak's promise to seek a default judgment. In the proposed Assignment Agreement, the parties agreed Silver Oak would request $24,815 in the default paperwork, plus costs but no attorney fees. The draft agreement specified that after the court entered a default judgment, Silver Oak was required to file and serve an acknowledgement saying the judgment had been fully assigned to Villmer, who in turn promised she would pay all attorney fees and costs incurred to recover the money due under the default judgment. Great American and Silver Oak made no guarantees that Villmer would be able to successfully collect any sum of money after they assigned their rights to the default judgment. As such, the value of the assignment was likely less than $24,815 in light of the parties' belief there were risks associated with collection, a possibility the default judgment could be set aside, and the likelihood of additional attorney fees.

Based on our review of the record and the Settlement Agreement, we conclude the court's decision to enforce Silver Oak's assignment promise by awarding a $24,815 monetary judgment required it to create new material terms and rewrite existing terms of the agreement. The parties did not agree to monetary damages in the event an assignment was not possible. Moreover, the award did not accurately reflect the value of the parties' agreement. The court failed to take into consideration evidence Silver Oak never guaranteed any recovery from the default judgment and the parties recognized there could be additional attorney fees and costs associated with any collection efforts. As stated above, "'Only the valid and binding agreement of the parties, including all material terms well-defined and clearly expressed, may be ordered specifically performed.' [Citation.]" (*Weddington, supra,* 60 Cal.App.4th at p. 817.) There is simply no legal or factual basis to support the trial court's entry of a monetary penalty

15

against Silver Oak as a fair alternative to the agreed upon partial assignment of the default judgment.

III

The judgment entered pursuant to section 664.6 is reversed, including the attorney fees awarded to Villmer and the matter is remanded.  Appellants shall recover their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.