Filed 6/2/14  Freis v. Scarvaci CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JOHN C. FREIS, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANGELYN SCARVACI, <br><br> Defendant and Appellant. | D064667 <br><br><br> (Super. Ct. No. 37-2010-00093904-CU-OR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Reversed and remanded with directions.

Robert N. Hocker for Defendant and Appellant.

Law Office of Philip H. Dyson and Philip H. Dyson for Plaintiff and Respondent.

Angelyn Scarvaci appeals from a judgment enforcing a settlement she entered into with John C. Freis in his lawsuit seeking an order requiring Scarvaci to cooperate in paving a dirt driveway that passes over Scarvaci's real property to Freis's house.  We conclude that the trial court erred in granting the motion to enforce the settlement because

it improperly added terms to the settlement agreement to which Scarvaci did not agree. We further conclude that the current situation triggers a provision in the settlement agreement nullifying the settlement and reactivating the case. Accordingly, we reverse the judgment and remand to the trial court with directions to take the case off the dismissal track and reactivate the litigation.

I

FACTUAL AND PROCEDURAL BACKGROUND

Freis owns a home in Rancho Santa Fe. The access to Freis's property is over a dirt driveway that passes through real property owned by Scarvaci. Freis has an easement allowing him to access his property using the driveway.

A dispute arose when Freis wished to pave the dirt driveway, but Scarvaci opposed the idea. The driveway also serves as a horse trail controlled by the Rancho Santa Fe Association (the Association), and the dispute over paving the driveway is related to whether it is safe and appropriate to pave a horse trail.

Freis filed this lawsuit against Scarvaci in June 2010 alleging various causes of action, including injunctive and declaratory relief regarding the paving of the driveway.

The parties entered into a settlement agreement in July 2012. As the parties recognized in the settlement agreement, pursuant to the Rancho Santa Fe covenant, the Association "has ultimate authority over what can be done in the Easement." The parties therefore agreed to apply to the Association to determine whether the driveway should be paved. In the settlement agreement, Scarvaci specifically agreed to sign the application

2

to submit to the Association.  Paragraph 4 of the settlement agreement states in relevant part:

> "The parties will submit the issue of paving the Easement to the [Association or its subordinate entities] for determination of what can be done regarding paving and maintenance on the Easement.  Ms. Scarvaci will sign the application to the Association for building/paving the Easement, and her signature on this Settlement Agreement can be presented to the Association as if she signed the application (that application is attached hereto as Exhibit 'B') . . . ."

The application to the Association, which was attached to the settlement agreement as exhibit B (the Application), consisted of a construction permit application by John and Beverly Freis[1] containing a contractor's drawing showing the location and dimensions of the paved road and describing the following scope of work:

> "1.     Regrade existing direct road and compact
>
> "2.     Apply soil sterilant
>
> "3.     Construct a 12' x 836' road with 3 hot asphalt — roll/compact
>
> "4.     A special 3/4" asphalt aggregate mix will be used to provide a more 'horse friendly' surface
>
> "5.     Install a 'driveable 4' hand asphalt berm on northwest side of road to channel water drainage
>
> "6.     Construct an asphalt 'spillway' at drainage inlet
>
> "7.     Scope of work limited to confines of easement . . . ."

---

[1]     Beverly Freis is John Freis's ex-wife and a current owner of Freis's real property. Although not a plaintiff in the litigation, Beverly Freis was a party to the settlement agreement and submitted a declaration in support of the motion to enforce the settlement agreement.

3

The settlement agreement further provided that "[t]he final decision of the [Association] regarding the Easement will be respected by Plaintiff and Defendant and followed by them."

In the settlement agreement, the parties agreed that the trial court would retain jurisdiction to enforcement the agreement, and that in any proceeding brought to enforce the agreement, the prevailing party would be entitled to an award of reasonable attorney fees.

According to the settlement agreement, the case would be put on a 45-day dismissal track and "[t]he action will be taken off the dismissal track and reactivated if the [Association] decides against approving the building permit for the paving of the driveway over the Easement because the Association determines that . . . Scarvaci, as one owner of the Easement, did not consent to Freis's application to pave the Easement."[2]

Scarvaci complied with the settlement agreement by signing the Application to the Association. However, according to declarations filed by Beverly Freis and by Freis's attorney, the Association reviewed the Application and required more specificity in the Application. As a result, Freis hired an engineer, commissioned a formal survey, and obtained fire department approval.

---

[2] Despite being put on a dismissal track, the case was not dismissed in the trial court prior to the ruling on the motion to enforce the settlement, as the parties obtained continuations of the dismissal date while the Application was being reviewed by the Association.

Freis prepared an amended application reflecting the specificity required by the Association (the Second Application). The only portion of the Second Application that appears in the appellate record is an engineer's drawing, which is much more detailed than the contractor's drawing that was originally submitted with the Application. Among other things, the drawing shows that several portions of Scarvaci's fence and some trees will be relocated. The fence and trees will be removed from a strip on the northwest portion of the 15-foot-wide easement where a four-foot-wide decomposed granite trail will be placed next to an 11-foot-wide paved road. We infer from the parties' comments that this four-foot-wide strip is to be used as a horse trail as an alternative to the pavement. The engineer's drawing attached to the Second Application did not include the drainage berms shown in the contractor's drawing for the Application.

Freis sought to submit the Second Application to the Association. The Association required Scarvaci's signature on the Second Application before it would act upon the Second Application, but Scarvaci refused to sign it. Scarvaci objected to the Second Application because the construction plans (1) included the removal of her trees and fence, which she contended were not located within the easement area; (2) did not show the construction of berms needed for drainage; and (3) located the decomposed granite horse trail on the northwest side of the paved road instead of on the southeast side.

Freis brought a motion to enforce the settlement. Specifically, Freis sought an order requiring Scarvaci to sign the Second Application or appointing an elisor to sign the

Second Application if Scarvaci refused. Freis also requested an order that Scarvaci pay the attorney fees he incurred in connection with the motion to enforce the settlement.

Scarvaci opposed the motion to enforce the settlement. She argued that the settlement agreement required only that she sign the Application, as attached to the settlement agreement. Scarvaci contended that because the Second Application was a substantially new application with terms she never agreed to, including the removal of her fence and trees and the location of the decomposed granite horse trail, she had no legal duty under the settlement agreement to sign it.

Freis took the position that the settlement should be enforced by ordering Scarvaci to sign the Second Application because the parties agreed in the settlement agreement to abide by the final decision of the Association on the paving of the easement, but that final decision cannot be made if the Second Application is not submitted to the Association with Scarvaci's signature.[3]

_____

3    Scarvaci filed evidentiary objections in the trial court on which the trial court did not rule. Scarvaci renews some of those evidentiary objections on appeal. Specifically, she contends that the statements in the declarations of Beverly Freis and counsel for Freis describing the Association's response to the Application and the Association's position that it will not take further action without Scarvaci's signature on the Second Application should be stricken because the declarants were not "competent" to describe the demands of the Association as the "evidence could have only come from the Association." When the trial court does not rule on an evidentiary objection and it is renewed on appeal, we deem the objection to have been overruled in the trial court and we review the ruling to determine whether the trial court abused its discretion. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534; *Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1476.) We conclude that the trial court did not abuse its discretion by impliedly overruling the objections to the competency of the declarants to describe the position of the Association. As shown in their declaration, both of the declarants were involved in

In July and August 2013, while the motion to enforce the settlement was pending, the parties — through counsel — engaged in discussions to try to come to an agreement on those items in the Second Application to which Scarvaci objected, but they failed to reach an agreement.

On August 26, 2013, the trial court granted the motion to enforce the settlement. The trial court found that "[u]pon submittal to the Association, the Association demanded more specificity in the plans to pave the easement." Based on that finding, the trial court concluded that "[t]he new proposal is simply a continuation of the process of putting the issue before the Association as required by the settlement agreement." The trial court ordered Scarvaci to sign the Second Application within 15 days and stated it would appoint an elisor if Scarvaci refused to do so. The trial court also ordered Scarvaci to pay Freis attorney fees in the amount of $6,175.

## II

## DISCUSSION

Scarvaci contends that we should reverse the judgment enforcing the settlement because the trial court exceeded its authority by creating new settlement terms to which Scarvaci never agreed. According to Scarvaci, "[b]y ordering Scarvaci to sign the amended application containing a different scope of work, the Trial Court created new material terms to the Settlement Agreement[,]" and reversal is therefore warranted.

---

the process of dealing with and responding to the Association, and thus have competent firsthand knowledge of the Association's position on the Application.

7

A.      *Applicable Legal Standards*

We begin with an overview of the law on the enforcement of settlements.

Pursuant to Code of Civil Procedure section 664.6, when the parties agree that the trial court will retain jurisdiction to enforce a settlement, a trial court may enter judgment on a settlement agreement pursuant to a motion to enforce a settlement. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809-810 (*Weddington*).) "The purpose of section 664.6 . . . 'is to permit a court, via a summary proceeding, to finally dispose of an action when the existence of the agreement or the terms of the settlement are subject to reasonable dispute . . . ." (*Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 432, fn. 1.)

"Factual determinations made by a trial court on a [Code of Civil Procedure] section 664.6 motion to enforce a settlement must be affirmed if the trial court's factual findings are supported by substantial evidence. [Citations.] Other rulings are reviewed de novo for errors of law." (*Weddington*, *supra*, 60 Cal.App.4th at p. 815.) "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Id*. at p. 810.) "Where, as here, the issue is one of contractual interpretation and there is no conflicting extrinsic evidence as to the proper interpretation, the issue is a question of law as to which the appellate court is in as good a position as the trial court to pass; accordingly, the appellate court is not bound by the trial court's interpretation and must arrive at its own interpretation de novo." (*Southern Pacific Land Co. v. Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807, 817 (*Southern Pacific*).)

"The power of the trial court under Code of Civil Procedure section 664.6 . . . is extremely limited. 'Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' . . . [¶] . . . The court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement." (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176.) " 'Only the valid and binding agreement of the parties, including all material terms well-defined and clearly expressed, may be ordered specifically performed.' " (*Weddington*, *supra*, 60 Cal.App.4th at p. 817.)

B.      *The Trial Court Improperly Added Terms to the Settlement Agreement*

Acknowledging the proscription against adding material terms to a settlement agreement, the parties recognize that the fundamental issue for us to resolve is whether the trial court impermissibly added material terms to the settlement agreement by ordering Scarvaci to sign the Second Application containing a detailed construction plan to which she objects. Our resolution of that issue requires us to interpret the settlement agreement to determine the scope of the parties' agreement. Where, as here, extrinsic evidence is not involved in that determination, we approach that question de novo. (*Southern Pacific*, *supra*, 188 Cal.App.3d at p. 817.)

In interpreting the settlement agreement we apply fundamental rules of contract interpretation, which " 'are based on the premise that the interpretation of a contract must

9

give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)" [Citations.]' . . . 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' (Civ. Code, § 1641.) 'The factual context in which an agreement was reached is also relevant to establish its meaning unless the words themselves are susceptible to only one interpretation.' " (*Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1124, citations omitted.)

Here, the plain language of the settlement agreement reflects three specific things that Scarvaci agreed to with respect to obtaining a decision from the Association: (1) the parties will "submit the issue of paving the Easement" to the Association; (2) Scarvaci will sign the Application attached to the settlement agreement; and (3) Scarvaci will respect the "final decision of the [Association] . . . regarding the Easement." The question presented is whether, in entering into these three agreements, Scarvaci agreed to bind herself to approval of a specific construction plan that is different from that reflected on the contractor's drawing and scope of work attached to the Application. As we will

explain, we find nothing in the settlement agreement indicating Scarvaci's agreement to approve a different construction plan.

First, Scarvaci's agreement to sign the Application attached to the settlement agreement cannot reasonably be interpreted as an agreement to the different construction plans reflected in the engineer's drawing attached to the Second Application. Rather than merely adding a level of specificity not present in the original contractor's drawing, the engineer's drawing attached to the Second Application is materially different. The construction plans set forth in the Second Application require the removal of several portions of Scarvaci's fence, the removal of some of Scarvaci's trees, and the creation of a four-foot-wide decomposed granite horse trail. It also fails to include the berms for drainage purposes included in the original contractor's drawing attached to the Application. We see no indication that Scarvaci agreed to that plan by entering into the settlement agreement.

Second, Scarvaci's agreement to "submit the issue of paving the Easement" to the Association and to respect "the final decision" of the Association cannot reasonably be interpreted as binding her to accept whatever new construction plans are required by the Association regardless of whether those plans differ materially from the construction plans set forth in the Application. Giving effect to *all* portions of the settlement agreement, we cannot overlook the fact that the settlement agreement specifically includes the Application as an exhibit, and that Application contains a specific contractor's drawing with a specific scope of work. Because the Application is attached as an exhibit to the settlement agreement, the most reasonable interpretation of the

11

settlement agreement is that Scarvaci agreed to submit to the Association the issue of whether it would approve the paving of the easement *according to the construction plans attached to the Application*, but that she did not consent to construction plans that were materially different from those attached to the Application.

We therefore conclude that by ordering Scarvaci to sign the Second Application, which attaches construction plans that are materially different from the construction plans attached to the Application, the trial court added new material terms to the settlement agreement to which Scarvaci did not agree. Accordingly, the trial court exceeded its authority in enforcing the settlement, and we reverse the judgment.

C.     *Scarvaci's Refusal to Continue to Participate in the Process to Obtain a Decision from the Association on Paving the Easement Triggered Paragraph 7 of the Settlement Agreement*

We next consider the proper disposition of this matter upon remand to the trial court.[4] It appears from the record that prior to the trial court's ruling on the motion to enforce the settlement, the litigation was inactive and on a dismissal track but had not yet been dismissed as called for under the terms of the settlement agreement. Our reversal of the judgment effectively puts the action back in the procedural posture that existed before the motion to enforce the settlement was granted: inactive and on the dismissal track under the terms of the settlement agreement.

As we have described, paragraph 7 of the settlement agreement provides that the action will be taken off the dismissal track and reactivated "if the [Association] decides

_____

4     We afforded the parties an opportunity to submit letter briefs on this issue pursuant to Government Code section 68081.

against approving the building permit for the paving of the driveway over the Easement because the Association determines that . . . Scarvaci, as one owner of the Easement, did not consent to the Freis's application to pave the Easement." As we interpret this provision, it effectively nullifies the settlement agreement and reactivates the litigation under the conditions described in paragraph 7.

The current situation triggers paragraph 7 of the settlement agreement. As the trial court found, and as supported by substantial evidence in the record, the Association will not give its approval to pave the easement unless Scarvaci signs the Second Application and participates in the continuing permit review process. However, under the current circumstances — after receiving the Association's feedback on the Application — Scarvaci does *not* consent to Freis's attempt to pave the easement and therefore will not sign the Second Application. Scarvaci's refusal to consent to the Second Application has resulted in the cessation of the process of obtaining the Association's approval to pave the easement, effectively serving as a denial of a permit to pave the easement due to Scarvaci's refusal to participate in the process.

As Scarvaci's lack of consent to Freis's application to pave the driveway has resulted in the Association's refusal to issue a permit, paragraph 7 of the settlement agreement applies. Accordingly, upon remand, the case must be removed from the dismissal track and reactivated so that Freis may pursue his lawsuit seeking relief from Scarvaci's refusal to allow the paving of the easement.

13

## DISPOSITION

The judgment enforcing the settlement agreement is reversed.  This action is remanded to the trial court with directions to reactivate it and remove it from the dismissal track.

IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.